UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REV. XIU HUI "JOSEPH" JIANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15-CV-1008 (CEJ) |
| ) | |
| TONYA LEVETTE PORTER, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendants Survivors Network of Those Abused by Priests, David Clohessy, and Barbara Dorris to dismiss pursuant to Mo. Rev. Stat. § 537.528 or, in the alternative, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has responded in opposition, and the issues are fully briefed.

**I.    Background**

Plaintiff Reverend Xiu Hui "Joseph" Jiang is Chinese-born ordained Catholic priest in the Archdiocese of St. Louis. Jiang asserts that defendants A.M. and N.M. falsely accused him of sexually abusing their minor son for the purpose of monetary gain. Jiang also asserts that defendants Jaimie D. Pitterle and Tonya Levette Porter, officers of the St. Louis Metropolitan Police Department, conducted an inadequate investigation of the abuse allegations and targeted plaintiff for prosecution because of his religion and ethnicity. He alleges that defendant City of St. Louis failed to properly train the officers and that the officers' conduct was the result of the city's unconstitutional policies and practices. Jiang further asserts that defendants Survivors Network of Those Abused by Priests, its executive director

David Clohessy, and its registered agent in Missouri Barbara Dorris (the "SNAP defendants") led a public smear campaign against him which included making false accusations of child molestation in the media. The criminal case against Jiang remained pending in state court from April 17, 2014 until June 17, 2015, when it was voluntarily dismissed shortly before trial.

The fifteen-count complaint consists of the following claims: religious discrimination, selective enforcement and prosecution based on religion, race and national origin, and conduct shocking the conscience, all in violation of 42 U.S.C. § 1983, against defendants Porter and Pitterle (Counts I–VI); conspiracy to violate civil rights, in violation of 42 U.S.C. § 1985, against defendants except the City of St. Louis (Count VII); willful, malicious and reckless official acts in violation of Missouri law against defendants Porter and Pitterle (VIII); vicarious liability and Monell claims for unconstitutional policy and practice and failure to train and supervise against defendant City of St. Louis (Counts IX–XI); abuse of process against defendants Porter, Pitterle, A.M. and N.M. (Count XII); intentional infliction of emotional distress against all defendants except the City of St. Louis (Count XIII); and defamation against A.M., N.M., and the SNAP defendants (Counts XIV–XV). Plaintiff seeks monetary and injunctive relief.

**Discussion**

In the instant motion, the SNAP defendants argue that the complaint should be dismissed as a strategic lawsuit against public participation. In the alternative, defendants argue that plaintiff has failed to state a claim against them.

    A.    **Missouri's Anti-SLAPP Statute**

Missouri has a statute designed to discourage "strategic lawsuits against public participation." Mo. Rev. Stat. § 537.528; Public Participation Project, State Anti-SLAPP Laws, http://www.anti-slapp.org/your-states-free-speech-protection/ (last visited August 14, 2015).[1]  Pursuant to Missouri's anti-SLAPP statute, "[a]ny action against a person for conduct or speech undertaken or made in connection with a public hearing or public meeting, in a quasi-judicial proceeding before a tribunal or a decision-making body of the state or any political subdivision of the state" is subject to special motions to dismiss, for judgment on the pleadings, or for summary judgment, and "these motions are to be considered on a priority or expedited basis by the court to prevent the expense of litigation."  § 537.528.1; Moschenross v. St. Louis Cnty., 188 S.W.3d 13, 24 (Mo. Ct. App. 2006); see also Cedar Green Land Acquisition, LLC v. Baker, 212 S.W.3d 225, 227 (Mo. Ct. App. 2007) (noting that the Missouri legislature has "recognized the importance of expedited judicial consideration and prevention of unnecessary litigation expenses for [SLAPP] actions") (internal quotations omitted).

However, the statute does not prohibit or curtail "the exercise of a right or remedy of a party granted pursuant to another constitutional, statutory, common law or administrative provision, including civil actions for defamation."  § 537.528.5.  "Therefore, the statute does not provide any special defenses or immunities; instead, it recognizes that many such suits are intended to prevent participation in governmental matters and accelerates the consideration of motions

---

[1] The acronym "SLAPP" was first coined in 1988 to describe a type of judicial recourse in which commercial interests attempt to intimidate citizens who otherwise would exercise their constitutionally protected rights of free speech and petition in order to protest against those interests.  See Penelope Canan & George W. Pring, Strategic Lawsuits Against Public Participation, 35 Soc. Probs. 506 (1988); Penelope Canan & George W. Pring, Studying Strategic Lawsuits Against Public Participation:  Mixing Quantitative and Qualitative Approaches, 22 Law & Society Rev. 385 (1988).

to dispose of such obstructive efforts." Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC, No. 08-840-CV-W-ODS, 2010 WL 4853848, at *1 (W.D. Mo. Nov. 22, 2010). The statute, thus, is a procedural statute with remedial provisions.

The SNAP defendants argue that the complaint constitutes a strategic lawsuit against public participation and thus should be dismissed pursuant to Mo. Rev. Stat. § 537.528. In arguing that the requisite elements of the statute are met, defendants contend that the prior state criminal proceedings against plaintiff constituted a "public meeting in a quasi-judicial proceeding." § 537.528.4. However, "[r]ead in context, the phrase 'public hearing' refers to hearings held by legislative, administrative, and executive agencies of the type referred to in subsection four of the statute." Hallmark Cards, Inc., 2010 WL 4853848, at *1; see § 537.528.4 ("As used in this section, a 'public meeting in a quasi-judicial proceeding' means and includes any meeting established and held by a state or local governmental entity, including without limitations meetings or presentations before state, county, city, town or village councils, planning commissions, review boards or commissions."). "Conspicuous by absence is any reference to judicial proceedings." Hallmark Cards, Inc., 2010 WL 4853848, at *1. Indeed, "[u]se of the phrase 'public hearing' seems to be an awkward way to describe judicial proceedings, particularly in light of the statute's other provisions indicating that the activity to be protected is involvement in public debate, the legislative process, and other aspects related to the representative branches of government." Id.

Furthermore, by the plain meaning of the statutory language, Missouri's anti-SLAPP statute excludes judicial proceedings. As defined, "quasi-judicial" refers to, relates to, or involves "an executive or administrative official's adjudicative acts."

4

Black's Law Dictionary (10th ed. 2014); see also State ex rel. McNary v. Hais, 670 S.W.2d 494, 496 (Mo. banc 1984) ("Quasi-judicial is '[a] term applied to the action . . . of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature.") (quoting Black's Law Dictionary 1121 (5th ed. 1979)). The term "public hearing," as used in Missouri statutes, consistently refers to legislative, executive or administrative proceedings, rather than judicial proceedings. See Pl.'s Ex. A – Mo. Statutory References to "Public Hearing" [Doc. #22-1] (collecting state statutes); cf. W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 88–92 (1991) (referring to fee-shifting provisions in other statutes to interpret the phrase "a reasonable attorney's fee" in 42 U.S.C. § 1988). As such, Missouri's anti-SLAPP statute does not apply to judicial proceedings.

The Court agrees with plaintiff that the SNAP defendants' reliance on California's anti-SLAPP statute and the case law interpreting that statute is misplaced. California's anti-SLAPP statute is much broader than Missouri's, explicitly including judicial proceedings and imposing a heightened substantive standard for a plaintiff to defeat an anti-SLAPP motion. See Cal. Civ. Pro. Code § 425.16(e)(2) (stating that an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes . . . any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"); § 425.16(b)(1)–(2) (stating that in opposing a special motion to strike a plaintiff is

5

required to "establish[] that there is a probability that the plaintiff will prevail on the claim" through "the pleadings, and supporting and opposing affidavits"); see also Hallmark Cards, Inc., 2010 WL 4853848, at *1 ("Defendants insist other states would view the matter differently. The easy answer to this is: the Missouri statute is at issue, not the laws of other states."). Accordingly, the SNAP defendants are not entitled to dismissal of the complaint on the basis of Missouri's anti-SLAPP statute.

### B. Sufficiency of the Pleadings

The SNAP defendants also contend that the complaint fails to a state a claim against them upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v.

Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### 1. Conspiracy to Violate Civil Rights

In Count VII, plaintiff alleges that the SNAP defendants conspired with the other defendants to violate plaintiff's civil rights, in violation of 42 U.S.C. § 1985. To show a civil rights conspiracy under § 1985(3), plaintiff must prove: "(1) the defendants conspired, (2) with the intent to deprive [him], either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that [he] or [his] property [was] injured, or [he was] deprived of exercising any right or privilege of a citizen of the United States." Barstad v. Murray Cnty., 420 F.3d 880, 887 (8th Cir. 2005). Defendants contend that the complaint contains no allegation of an "agreement" among the SNAP defendants or with any other defendant.

The first element of a civil rights conspiracy claim "requires evidence of specific facts that show a 'meeting of minds' among conspirators." Id. "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989). A plaintiff can satisfy this burden "by pointing to at least some facts which would suggest that [the alleged conspirators] reached an understanding to violate [his] rights." Id. (internal quotations omitted).

7

With respect to the alleged conspiracy between the SNAP defendants, the police officer defendants, and the defendant parents, the complaint asserts that the SNAP defendants engaged in a smear campaign against plaintiff, falsely accusing him of molesting the minor child for the purpose of adversely influencing the jury pool in any trial and to place pressure on the City of St. Louis and the police defendants to maintain the prosecution against plaintiff despite evidence of his innocence. Compl. at ¶¶ 1, 83–84 [Doc. #1]. The complaint also alleges that the SNAP defendants deliberately coordinated their defamatory statements about plaintiff to support and assist A.M. and N.M. in their conspiracy with police defendants to deprive plaintiff of his civil rights, timing their public accusations to coincide with critical events of plaintiff's criminal case. Id. at ¶¶ 81(g), (i), 85. Moreover, the complaint provides specific details of coordinated public statements made by each of the SNAP defendants as a part of their larger smear campaign. Id. at ¶¶ 76, 81, 85.

Accepting the factual allegations in the complaint as true for purposes of the instant motion, the Court finds that plaintiff has pointed to at least some facts suggesting that defendants had a meeting of the minds or reached an understanding to violate plaintiff's civil rights. Defendants do not challenge the sufficiency of the complaint with respect to the remaining elements of an alleged civil rights conspiracy. Thus, the Court will deny the SNAP defendants' motion to dismiss Count VII for failure to state a claim.

### 2. Intentional Infliction of Emotional Distress

In Count XIII, plaintiff alleges that the police defendants, A.M., N.M., and the SNAP defendants intentionally inflicted emotional distress upon him in their

8

conduct, including but not limited to arresting and prosecuting him because of ethnic and religious animus, publicly accusing him of committing crimes without reasonable belief that he had done so, and depriving him of his personal liberty and right to practice his religion and religious vocation freely. To state a claim for intentional infliction of emotional distress under Missouri law, "a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. banc 1997). The conduct "must be 'intended only to cause extreme emotional distress to the victim.'" Id. (quoting K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996)).

The SNAP defendants first argue that the complaint fails to state a claim against them because the emotional distress plaintiff claims to have suffered resulted primarily from the accusation against him and his arrest, incidents in which the SNAP defendants were not involved. However, the complaint does not merely assert that plaintiff suffered emotional distress because of the initial accusation and his arrest. Rather, the complaint alleges that the SNAP defendants' continued pressure on state actors and the minor's parents to persist in plaintiff's prosecution, their ongoing campaign to inflame public opinion against plaintiff, and their efforts to influence a prospective jury pool in a criminal or civil trial through adverse publicity targeting plaintiff over the course of several years caused him to suffer severe emotional distress, loss of sleep and appetite, and other harm. Compl. at ¶¶ 76–85. These factual allegations sufficiently establish the SNAP defendants' involvement in the alleged intentional infliction of emotional distress.

Additionally, defendants assert that plaintiff failed to allege any conduct on the part of the SNAP defendants that rises to the level of "extreme and outrageous." The conduct in a claim of intentional infliction of emotional distress "must have been 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Gibson, 952 S.W.2d at 249 (quoting Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo. 1969)). Defendants contend that to the extent that plaintiff relies upon their alleged defamatory statements for his intentional infliction of emotional distress claim, the claim should dismissed. See Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. banc 1996) ("A cause of action for intentional infliction of emotional distress does not lie when the offending conduct consists *only* of a defamation.") (internal quotations omitted).

In Missouri, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Wilt v. Kansas City Area Trans. Auth., 629 S.W.2d 669, 671 (Mo. Ct. App. 1982). In making such a determination, the court is to decide whether an "average member of the community" would term such conduct "outrageous." Id. (quoting Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965)). "It must be beyond mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." J.R. v. P.B.A., 773 S.W.2d 235, 236 (Mo. Ct. App. 1989).

Plaintiff's intentional infliction of emotional distress claim against the SNAP defendants does not rely solely on acts of defamation and goes beyond mere insults, annoyances or trivialities. The complaint alleges that the SNAP defendants

10

engaged in a prolonged campaign to portray plaintiff as a child molester, even after criminal charges against him were dismissed. See Cline v. Union Cnty., Iowa, 182 F. Supp. 2d 791, 799 (S.D. Iowa 2001) (finding summary judgment inappropriate on a claim of intentional infliction of emotional distress based on remaining factual questions pertaining to the time, place and publicity surrounding plaintiff's alleged false arrest and malicious prosecution); Hess v. Treece, 693 S.W.2d 792, 796 (Ark. 1985) (finding the facts established outrageous conduct for an intentional infliction of emotional distress claim when the statements defendant directed against plaintiff were the driving force behind repeated police investigations of plaintiff and continued over a period of two years or more). The Court finds that these factual allegations are sufficient to state a plausible claim for the intentional infliction of emotional distress against the SNAP defendants. It would be premature at this stage in the proceedings to dismiss this claim on the basis of defendants' threadbare contentions in the instant motion.

### 3. Defamation

Defendants argue that the defamation claim should be dismissed because it fails to set forth the alleged defamatory statements with sufficient specificity. In particular, defendants take issue with the qualification in the complaint that the alleged defamatory statements defendants made "include, but are not limited to, the following examples." Compl. ¶ 81.

To prevail on a defamation claim in Missouri, a plaintiff must establish that the defendant made a defamatory statement that identified the plaintiff, was false, was published with the requisite degree of fault, and damaged the plaintiff's reputation. Farrow v. Saint Francis Med. Ctr., 407 S.W.3d 579, 598–99 (Mo. banc

2013). "It is necessary to state the specific words which are argued to be defamatory in order to state a cause of action." Tri-Cnty. Retreading, Inc. v. Bandag, Inc., 851 S.W.2d 780, 785 (Mo. Ct. App. 1993); see also Asay v. Hallmark Cards, Inc., 594 F.2d 692, 699 (8th Cir. 1979) (stating that federal courts favor specific pleading of defamation claims because "knowledge of the exact language used is necessary to form responsive pleadings").

In the complaint, plaintiff alleges ten specific statements the SNAP defendants made in press releases, television interviews, and newspaper articles falsely accusing him of sexually abusing a child, causing him severe and actual reputational harm. Compl. ¶¶ 81(a)–(j), 169–77. The additional allegation that defendants' defamatory statements were not limited to these ten specific allegations does not cause plaintiff's specific allegations to become too indefinite to state a claim for defamation. Defendants have cited no authority for this proposition and have not challenged the sufficiency of the specific defamatory statements alleged. As such, accepting the specific factual allegations as true, the Court finds that plaintiff has sufficiently stated a claim against the SNAP defendants for defamation.

\* \* \* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants SNAP, David Clohessy and Barbara Dorris to dismiss [Doc. #9] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 28th day of December, 2015.