UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REV. XIU HUI "JOSEPH" JIANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15-CV-1008 (CEJ) |
| ) | |
| TONYA LEVETTE PORTER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendants Tonya Levette Porter, Jaimie Pitterle, and the City of St. Louis to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has responded in opposition, and the issues are fully briefed.

### I. Background

Plaintiff Reverend Xiu Hui "Joseph" Jiang is a Chinese-born ordained Catholic priest in the Archdiocese of St. Louis. Jiang asserts that defendants A.M. and N.M. falsely accused him of sexually abusing their minor son for the purpose of monetary gain. Jiang also asserts that defendants Jaimie D. Pitterle and Tonya Levette Porter, officers of the St. Louis Metropolitan Police Department, conducted an inadequate investigation of the abuse allegations and targeted plaintiff for prosecution because of his religion and ethnicity. He alleges that defendant City of St. Louis failed to properly train the officers and that the officers' conduct was the result of the city's unconstitutional policies and practices. Jiang further asserts that defendants Survivors Network of Those Abused by Priests, its executive director David Clohessy, and its registered agent in Missouri Barbara Dorris (the "SNAP

defendants") led a public smear campaign against him which included making false accusations of child molestation in the media. The criminal case against Jiang remained pending in state court from April 17, 2014 until June 17, 2015, when it was voluntarily dismissed shortly before trial.

The fifteen-count complaint consists of the following claims: religious discrimination, selective enforcement and prosecution based on religion, race and national origin, and conduct shocking the conscience, all in violation of 42 U.S.C. § 1983, against defendants Porter and Pitterle (Counts I–VI); conspiracy to violate civil rights, in violation of 42 U.S.C. § 1985, against defendants except the City of St. Louis (Count VII); willful, malicious and reckless official acts in violation of Missouri law against defendants Porter and Pitterle (VIII); vicarious liability and Monell claims for unconstitutional policy and practice and failure to train and supervise against defendant City of St. Louis (Counts IX–XI); abuse of process against defendants Porter, Pitterle, A.M. and N.M. (Count XII); intentional infliction of emotional distress against all defendants except the City of St. Louis (Count XIII); and defamation against A.M., N.M., and the SNAP defendants (Counts XIV–XV). Plaintiff seeks monetary and injunctive relief.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule

12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## II. Discussion

### A. Qualified Immunity

Defendants Porter and Pitterle first contend that plaintiff's claims against them in Counts I to VI should be dismissed, because they were shielded by qualified immunity at all times relevant to this action. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Dismissal on the basis of qualified immunity "is inappropriate unless it appears beyond doubt [that the plaintiff] can prove no set of facts in support of [his] constitutional claims which would entitle [him] to relief." Central Airlines, Inc. v. United States, 138 F.3d

333, 334 (8th Cir. 1998) (internal quotations omitted); see also Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995) (stating that qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint").

To overcome defendants' qualified immunity claims, plaintiff must show that: "(1) the facts, viewed in the light most favorable to the [him], demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (internal quotations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Coleman v. Parkman, 349 F.3d 534, 538 (8th Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Courts are allowed "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

In Counts I through V, plaintiff asserts claims of discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and the Free Exercise Clause of the First Amendment. In Count VI, plaintiff asserts a Fourteenth Amendment substantive due process claim. The gravamen of plaintiff's equal protection claims is that the police defendants treated him less favorably in their investigation and prosecution because of his religion, his status as an ordained minister, and his race or national origin. Plaintiff's substantive due process claim is based on the allegation that the police defendants' pursued the criminal prosecution

4

against him, even though they had evidence that the accusation of sexual abuse was false and they knew that plaintiff had passed a polygraph test.

Defendants contend that the complaint describes the conduct of objectively reasonable police officers responding to and investigating allegations of child sexual abuse. Also, defendants assert that plaintiff has not alleged that the failure to offer or act upon a polygraph examination violated his clearly established constitutional rights.

Prosecutorial discretion may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." Wayte v. United States, 470 U.S. 598, 608 (1985) (internal quotations and citations omitted). Selective prosecution and selective enforcement claims are judged according to ordinary equal protection standards. Id. These claims require a plaintiff to show both a discriminatory effect and that the state actors were motivated by a discriminatory purpose. Id. at 608–09; see also United States v. Armstrong, 517 U.S. 456, 465 (1996). To establish a discriminatory effect, a plaintiff must show that similarly situated individuals were not prosecuted. Armstrong, 517 U.S. at 465. Discriminatory purpose "implies that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Wayte, 470 U.S. at 610 (internal quotations omitted).

According to the complaint, defendants Porter and Pitterle conducted only a minimal investigation of the abuse accusations. Had they conducted a more thorough investigation, they would have learned that the minor child had made

5

unfounded claims of sexual abuse in the past and that he was mentally and emotionally troubled; that defendants A.M. and N.M. had a history of making unfounded allegations against the Catholic Church for financial gain; and that there were circumstances that made it impossible for plaintiff to have committed the abuse as alleged. It is further alleged that none of the child's accusations could be substantiated and that the child made the accusations only after they were suggested to him by his father.

Additionally, the complaint asserts that the police defendants ordinarily conduct more substantial and thorough investigations before arresting and charging suspects in cases involving allegations of sexual abuse against children. The complaint alleges that the police defendants targeted plaintiff for selective prosecution because of discriminatory animus toward plaintiff's religion, race and national origin, as a Catholic priest and Chinese national. Moreover, the complaint explains that the police defendants and the City of St. Louis had a general policy and practice of permitting criminal defendants who maintain their innocence to take polygraph examinations and then dropping charges against that defendant if he or she passes the polygraph examination. However, the police defendants deviated from this policy when they refused to permit plaintiff to take a polygraph examination to rebut the allegations against him and when they refused to dismiss the charges against plaintiff after he passed a polygraph examination. Id. at ¶ 63–68, 70–72, 73(d)–(e).

On the basis of these allegations, accepted as true for purposes of the instant motion, the complaint alleges facts that sufficiently support plaintiff's claim that he was treated less favorably than similarly situated individuals and that he was

targeted for prosecution because of his religion, race and national origin, in violation of plaintiff's clearly established rights under the Equal Protection Clause. Counts I to V will not be dismissed on the basis of qualified immunity at this stage in the litigation. See Central Airlines, Inc., 138 F.3d at 334; Weaver, 45 F.3d at 1255.

With respect to Count VI, "[t]o establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." Flowers v. City of Minneapolis, Minn., 478 F.3d 869, 873 (8th Cir. 2007) (internal quotations omitted). "When government officials engage in conscious-shocking, egregious behavior that is clearly outside the scope of their discretionary authority, they are not entitled to qualified immunity under section 1983." Moran v. Clark, 359 F.3d 1058, 1060 (8th Cir. 2004) (finding that defendant law enforcement officers were not entitled to qualified immunity protection when they knew or should have known it was a violation of plaintiff's substantive due process rights to conspire to manufacture evidence and wrongfully prosecute an innocent person); see also Devereaux v. Abbey, 263 F.3d 1070, 1074–76 (9th Cir. 2001) (holding that one way for the plaintiff to assert a clearly established constitutional due process right in a deliberate-fabrication-of-evidence claim would be to point to evidence supporting the proposition that defendants continued their investigation of plaintiff despite the fact that they knew or should have knew he was innocent).

Here, the complaint alleges that defendants Porter and Pitterle relentlessly pursued a criminal prosecution against plaintiff on the basis of his religion, race,

7

and national origin even though they knew or should have known he was innocent after further investigation and witness interviews. Id. at ¶¶ 59–62, 73(b), 120–26. Accepted as true for purposes of a motion to dismiss, these allegations set forth a clearly established violation of plaintiff's constitutional substantive due process rights. At this stage in the proceedings, dismissal of Count VI is inappropriate on the basis of qualified immunity. See Central Airlines, Inc., 138 F.3d at 334; Weaver, 45 F.3d at 1255.

### B. Official Immunity

Defendants Porter and Pitterle next contend that plaintiff's claims in Counts VIII, XII, and XIII should be dismissed on the basis of official immunity. In these counts, plaintiff asserts state law claims of willful, malicious and reckless official acts, abuse of process, and intentional infliction of emotional distress.

"Under Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties." McLean v. Gordon, 548 F.3d 613, 617 (8th Cir. 2008) (quoting James ex rel. James v. Friend, 458 F.3d 726, 731 (8th Cir. 2006)). "Official immunity does not, however, shield officials for liability arising from their negligent performance of ministerial acts or functions." Id. Discretionary acts require "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or pursued." Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. banc 1984) (quoting Jackson v. Wilson, 581 S.W.3d 39, 43 (Mo. Ct. App. 1979)). A ministerial act is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal

8

authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." Id. Plaintiff concedes that the investigation of a crime and the decision to arrest a suspect constitute discretionary acts for purposes of Missouri's official-immunity doctrine. Reasonover v. St. Louis Cnty., Mo., 447 F.3d 569, 585 (8th Cir. 2006).

However, "official immunity is a qualified immunity and does not apply to those discretionary acts done in bad faith or with malice." Davis v. Bd. of Educ., 963 S.W.2d 679, 688 (Mo. Ct. App. 1998); see also State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. banc 1986). Bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury. Twiehaus, 706 S.W.2d at 447. A defendant acts with malice by wantonly doing that which a person of reasonable intelligence would know to be contrary to his or her duty and which the defendant intends to be prejudicial or injurious to another. Id. (quoting Grad v. Kaasa, 312 S.E.2d 888, 890 (N.C. 1984)). Bad faith "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. (quoting Catalina v. Crawford, 483 N.E.2d 486, 490 (Ohio Ct. App. 1984)). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The complaint expressly alleges that defendants Porter and Pitterle acted with malice, in bad faith, and with the intent to harm plaintiff. Also, the complaint asserts numerous factual allegations which support the inference that the police defendants acted with the requisite bad faith, malice, and actual intent to disqualify them for official immunity. See Complaint at ¶ 60 (asserting that the police

9

defendants maintained a baseless prosecution of plaintiff on the basis of religious animus long after further investigation demonstrated that he was innocent); ¶¶ 58, 69–73, 92, 97, 109 (claiming that the police defendants intentionally deviated from investigative and prosecutorial policies in their treatment of plaintiff in comparison to similar situated defendants); ¶ 39 (asserting that defendant Pitterle engaged in leading interview techniques to elicit an allegation from minor of a particular form of sexual abuse). Accepting these allegations as true for purposes of this motion to dismiss, the Court finds that defendants Porter and Pitterle are not entitled to official immunity for the claims in Counts VIII, XII, and XIII.

### C. Vicarious Liability

Defendant City of St. Louis argues that plaintiff's claim against it in Count IX should be dismissed because the police defendants are not liable on the underlying substantive claims and because the City cannot be held liable under the doctrine of *respondeat superior*. Defendant premises its arguments for dismissal of Count IX on the presumption that the complaint alleges that the City is vicariously liable for the police defendants' unconstitutional acts pursuant to § 1983. However, in response to the instant motion, plaintiff asserts that Count IX alleges traditional common law vicarious liability for the police defendants' violations of state law, not federal law. Because the defendants have not challenged the underlying merits of the state law claims against Porter and Pitterle, the City's arguments for dismissal of plaintiff's vicarious liability claim do not have merit.

Rather, the only attack made on the underlying state law claims was the invocation of official immunity, which, as explained above, is inapplicable at this stage in the proceedings. Nonetheless, even if the police defendants were entitled

to official immunity on the state law claims brought against them, the City could still be liable for the actions of the police officers. In Southers v. City of Farmington, the Missouri Supreme Court explained:

> A finding that a public employee is entitled to official immunity does not preclude a finding that he or she committed a negligent act—because official immunity does not deny the existence of the tort of negligence, but instead provides that an officer will not be liable for damages caused by his negligence. Because the defense of official immunity is personal to a public employee, it cannot extend to protect his employing government entity sued under the doctrine of *respondeat superior*. A government employer may still be liable for the actions of its employee even if the employee is entitled to official immunity because the doctrine protects the employee from liability, but it does not erase the existence of the underlying "tortious conduct" for which the government employer can be derivatively liable.

263 S.W.3d 603, 611 (Mo. banc 2008) (internal citations omitted). The City's arguments regarding the underlying substantive claims and *respondeat superior* thus do not present a basis for the dismissal of Count IX.

However, the City also argues that plaintiff's state law cause of action against it in Count IX is barred by sovereign immunity, because plaintiff has failed to plead the existence of any exception to this doctrine of immunity. Mo. Rev. Stat. § 537.600. The claim of vicarious liability in Count IX is the sole state law cause of action brought against the City. "Sovereign immunity is a judicial doctrine that precludes bringing suit against the government without its consent." State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell, 91 S.W.3d 612, 615 (Mo. banc 2002). "It bars holding the government or its political subdivisions liable for the torts of its officers or agents unless such immunity is expressly waived." Id. Section 537.600.1 of the Missouri Revised Statutes waives sovereign immunity for injuries resulting from the operation of motor vehicles and the condition of an entity's property. Additionally, section 537.610.1 provides that sovereign immunity

11

can be waived through a government entity's purchase of liability insurance for tort claims. Mo. Rev. Stat. § 537.610.1.

To penetrate a claim of immunity under section 537.610.1, the plaintiff bears the burden of proving the existence of an insurance policy and that the terms of the policy cover the plaintiff's claims. Topps v. City of Country Club Hills, 272 S.W.3d 409, 415 (Mo. Ct. App. 2008). Because the liability of a public entity for torts is the exception to the general rule of sovereign immunity, a plaintiff must specifically plead facts demonstrating that the claim is within an exception to sovereign immunity. Epps v. City of Pine Lawn, 353 F.3d 588, 594 (8th Cir. 2003). Statutory provisions waiving sovereign immunity are to be narrowly construed. Woods v. Kelly, 948 S.W.2d 634, 637 (Mo. Ct. App. 1997). The complaint does not allege any of the exceptions to sovereign immunity. As such, plaintiff's vicarious liability claim against the City of St. Louis in Count IX will be dismissed for the failure to plead any exception to sovereign immunity.

### D. Monell Claims

In Counts X and XI, plaintiff seeks to hold the City liable for its own unlawful conduct under § 1983. In Count X, the complaint alleges that the City maintained an unconstitutional policy and practice in violation of 42 U.S.C. § 1983. Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013) (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690–91 (1978) and City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 131 S. Ct. 1350, 1359 (U.S. 2011); see Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (stating that in the context of municipal liability under § 1983, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters").

Alternatively, an unofficial "custom" is demonstrated by:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation.

Ware v. Jackson Cnty., Mo., 150 F.3d 873, 880 (8th Cir. 1998) (internal citations and quotations omitted). "This standard serves to prevent municipal evasion of liability through improper delegation of policy responsibility or acquiescence in pervasive constitutional violations by [governmental] employees." McGautha v. Jackson Cnty., Mo., Collections Dep't, 36 F.3d 53, 56–57 (8th Cir. 1994).

Here, the complaint does not sufficiently allege the existence of an official unconstitutional policy or an unofficial custom. The most-detailed allegation in the complaint regarding any policy or custom simply states that "in launching and maintain the baseless prosecution" of plaintiff, the police defendants "acted in collusion with, with the approval of, and/or pursuant to decisions made by

13

supervisors within the St. Louis Metropolitan Police Department and/or others in positions of policy-making responsibility and authority in the City of St. Louis." Compl. ¶ 61. The remaining allegations relevant to Count X are mere legal conclusions. Id. at ¶¶ 142–45.

While a plaintiff need not specifically plead or identify an unconstitutional policy or custom to survive a motion to dismiss, at the very least, a plaintiff must allege facts which would support the existence of an unconstitutional policy or custom. See Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004). A plaintiff's failure to include "any 'allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom' renders the complaint deficient." Id. (quoting Doe v. Sch. Dist. of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003)); see also Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Because the complaint does not include any allegations or references by which the Court can reasonably infer that the conduct complained of resulted from an unconstitutional policy or custom, Count X will be dismissed for failure to state a claim.

In Count XI, plaintiff alleges that the City failed to adequately train and supervise the police defendants in violation of 42 U.S.C. § 1983. The Supreme Court has held that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 131 S. Ct. at 1359. However, "[a] municipality's culpability for a deprivation of

rights is at its most tenuous where a claim turns on a failure to train." Id. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 131 S. Ct. at 1360 (quoting Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 410 (1997)). Thus, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Brown, 520 U.S. at 409); see City of Canton, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Under § 1983, "a claim for failure to supervise requires the same analysis as a claim for failure to train." Atkinson, 709 F.3d at 1216 (quoting Robinette v. Jones, 476 F.3d 585, 591 (8th Cir. 2007)). Neither claim can succeed without evidence that the municipality "[r]eceived notice of a pattern of unconstitutional acts committed by [its employees]." Parrish v. Ball, 594 F.3d 993, 1002 (8th Cir. 2010). As such, a failure to supervise claim also may be maintained only if a defendant demonstrated deliberate indifference or tacit authorization of the

15

offensive acts. Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998) (quoting White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994)).

Plaintiff has not alleged facts sufficient to support a showing of deliberate indifference for the failure to supervise or train. The complaint merely asserts that the City of St. Louis failed to adequately train and supervise the police defendants regarding impermissible discrimination and retaliation on the basis of race or religion and proper procedures relating to investigation and arrest, but does not provide factual allegations to support these assertions apart from the allegations of the police defendants' unconstitutional acts. Compl. ¶¶ 147–48. The complaint simply states that the City's failure to train and supervise the police defendants "reflected the City of St. Louis's deliberate indifference . . . toward the constitutional rights of persons" with whom the police defendants would come into contact, without factual allegations to demonstrate the City adopted deficient or supervision or training practices or had actual or constructive notice of a pattern of unconstitutional acts committed by its police officers. Id. at ¶ 150; see Atkinson, 709 F.3d at 1217 ("Absent some form of notice, the city cannot be deliberately indifferent to the risk that its training or supervision of [its employees] would result in 'a violation of a particular constitutional or statutory right.'") (quoting Brown, 520 U.S. at 411). In the absence of factual allegations to support plaintiff's legal conclusions, there is no basis to hold the City of St. Louis liable under § 1983. As a result, plaintiff's claim in Count XI will also be dismissed for failure to state a claim.

### E. Conspiracy to Violate Civil Rights

In Count VII, plaintiff alleges that defendants Porter and Pitterle conspired with the other defendants to violate plaintiff's civil rights pursuant to 42 U.S.C. §

1985.  To prove a civil rights conspiracy under § 1985(3), plaintiff must prove: "(1) the defendants conspired, (2) with the intent to deprive [him], either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that [he] or [his] property [was] injured, or [he was] deprived of exercising any right or privilege of a citizen of the United States."  Barstad v. Murray Cnty., 420 F.3d 880, 887 (8th Cir. 2005).  Defendants Porter and Pitterle contend that the complaint is devoid of any particular or specifically demonstrable material fact that they did anything in agreement with the other named defendants.

The first element of a civil rights conspiracy claim "requires evidence of specific facts that show a 'meeting of minds' among conspirators."  Id.  "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement."  City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989).  A plaintiff can satisfy this burden "by pointing to at least some facts which would suggest that [the alleged conspirators] reached an understanding to violate [his] rights."  Id. (internal quotations omitted).

The complaint alleges that defendants Porter and Pitterle acted in concert to bring charges against plaintiff without conducting ordinary investigation and that they jointly persisted in the prosecution and investigation of plaintiff after they knew or should have known he was innocent.  The complaint further alleges that defendants N.M. and A.M. had direct contact with the police defendants regarding the investigation of plaintiff, and the SNAP defendants coordinated their conduct

with the police defendants to influence the investigation and prosecution against plaintiff.

Accepting the factual allegations in the complaint as true for purposes of the instant motion, the Court finds that plaintiff has pointed to at least some facts suggesting that defendants had a meeting of the minds or reached an understanding to violate plaintiff's civil rights. Defendants do not challenge the sufficiency of the complaint with respect to the remaining elements of an alleged civil rights conspiracy. Thus, the Court will deny the defendants' motion to dismiss Count VII for failure to state a claim.

\* \* \* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants Porter, Pitterle, and the City of St. Louis to dismiss [Doc. #27] is **granted as to Counts IX, X, and XI of the complaint and is denied in all other respects.**

An order of partial dismissal will accompany this Memorandum and Order.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 28th day of December, 2015.