UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REV. XIU HUI "JOSEPH" JIANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15-CV-1008 (CEJ) |
| ) | |
| TONYA LEVETTE PORTER, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's motion to compel discovery from defendants SNAP, David Clohessy, and Barbara Dorris (the "SNAP defendants"), pursuant to Fed. R. Civ. P. 37(a). The defendants have responded in opposition, and the issues are fully briefed.

### **I.** **Privilege Logs**

Plaintiff first requests that the Court compel the SNAP defendants to produce a complete privilege log. Federal Rule of Civil Procedure 26(b)(5)(A) requires that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Courts have consistently interpreted this requirement to mean that the party must produce a document index or privilege log. Jacobson v. Metro. St. Louis Sewer Dist., No. 4:14-CV-1333 (AGF), 2015 WL 5330428, at *3 (E.D. Mo. Sept. 14, 2015) (citing

Baranski v. United States, No. 4:11-CV-123 (CAS), 2014 WL 7335151, at *6 (E.D. Mo. Dec. 19, 2014)).

Upon review of defendants' objections to discovery requests and their amended privilege log, the Court finds that defendants have expressly asserted privileges to certain requests and sufficiently described the nature of the documents or information not produced or disclosed on the basis of those privileges, in compliance with Rule 26(b)(5)(A). Thus, the Court will deny plaintiff's request to compel defendants to produce an additional privilege log.

## II. **Work Product Objections in the Redaction Log**

Next, plaintiff asks the Court to overrule defendants' assertions of work-product objections in their redaction log. As to the first two categories of documents of which plaintiff complains—redacted emails that occurred before the filing of plaintiff's complaint and the SNAP defendants' communications with the media about plaintiff—defendants state that they will produce the documents identified. Because defendants have no objection to providing these documents, they will be ordered to produce them. With regard to the redacted June 26, 2015 email exchange between David Clohessy and St. Louis City Circuit Attorney Jennifer Joyce, defendants state that the common interest privilege applies. The Court will address this objection below.

As to the redacted June 26, 2015 email between Clohessy and the father of another individual who accused plaintiff of abuse, defendants claim that this issue was not raised during the parties' efforts to resolve the discovery disputes. However, plaintiff identified this communication in an email to the SNAP defendants' counsel regarding the parties' discovery disputes. See Ex. 20, p. 3 [Doc. #117-4].

2

Defendants have not explained how the work-product privilege applies to this email.  See Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997) (stating that the party who claims the benefit of a privilege has the burden of demonstrating that the privilege applies).  As such, the Court will order the defendants to produce the email exchange plaintiff identified.  See Ex. 19, p. 11 [Doc. #117-3].

Finally, plaintiff argues that defendants have not demonstrated that the redacted June 26, 2015 emails between defendants David Clohessy, Barbara Dorris, and SNAP president Barbara Blaine constitute work product.  In response, defendants state that these emails are internal emails within SNAP, sent the day after this lawsuit was filed, regarding the lawsuit and strategies for dealing with it.

Under Federal Rule of Civil Procedure 26(b)(3), a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial," unless the party seeking discovery "shows that it has substantial need for the materials to prepare for the case and cannot, without undue hardship, obtain their substantial equivalent by other means."  "[T]o be entitled to protection, the documents must have been prepared after a 'specific threat' of litigation became 'palpable.'"  Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co., No. 4:05-CV-1934 (DDN), 2012 WL 1389708, at *4 (E.D. Mo. Apr. 23, 2012) (quoting Black v. Pilot Travel Ctrs., LLC, No. 09-4170-KES, 2011 WL 1828039, at *2 (D.S.D. May 12, 2011)).  The timing of the emails exchanged supports defendants' assertion that they were prepared in anticipation of litigation.  Plaintiff has not shown a substantial need for the emails.  Thus, the Court will deny his motion to compel defendants to produce them.

### III. Common Interest Objections in the Redaction Log

Plaintiff also asks the Court to overrule the SNAP defendants' common interest doctrine objections as a basis for withholding three documents: (1) a January 16, 2015 email exchange among Barbara Dorris, Ken Chackes, David Clohessy, and Nicole Gorovsky; (2) a June 17, 2015 email exchange among David Clohessy, Barbara Dorris, and Ken Chackes; and (3) a June 26, 2015 email exchange between David Clohessy and St. Louis City Circuit Attorney Jennifer Joyce. With regard to the January 16 and June 17 email exchanges, both of which were generated prior to the filing of the instant lawsuit, defendants state they will withdraw their common interest objections. The Court will consider defendants' other assertions of privilege as a basis for redacting these emails below. With respect to the June 26 email exchange, which occurred after this lawsuit was filed, defendants argue that the common interest doctrine applies.

The common interest doctrine "expands the coverage of the attorney-client privilege" in certain circumstances:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 922 (8th Cir. 1997) (quoting Restatement (Third) of the Law Governing Lawyers § 126(1)). "This doctrine softens the ordinary requirement that lawyer-client communications must be made in confidence in order to be protected by the privilege." Id.

The requisite "common interest" exists where "the parties have an identical (or nearly identical) legal interest as opposed to a merely similar interest" or a commercial interest. Green Edge Enters., LLC v. Rubber Mulch, LLC, No. 4:02-CV-566 (TIA), 2006 WL 2623855, at *1 (E.D. Mo. Sept. 12, 2006) (quoting J.E. Dunn Constr. Co. v. Underwriters at Lloyd's London, No. 05-0092-CV-W-FJG, 2006 WL 1128777, at *1 (W.D. Mo. Apr. 25, 2006)). The parties invoking the common interest privilege "must establish that any exchange of privileged information was 'made in the course of formulating a common legal strategy,' and that the parties understood that the communication would be in furtherance of the shared legal interest." Fireman's Fund Ins. Co. v. Gream Am. Ins. Co., 284 F.R.D. 132, 140 (S.D.N.Y. 2012) (quoting Sokol v. Wyeth, Inc., No. 4:07-CV-8442 (KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008)).

Here, defendants have not demonstrated that the parties to the communication at issue have an identical legal interest made in the course of formulating a common legal strategy. The circuit attorney has never been a party in this case, nor has she been an attorney for any party in this case. Thus, there is no merit to defendants' suggestion that she shared a common interest with David Clohessy in defending against plaintiff's claims in this matter. As such, the Court will overrule defendants' common interest objection and order the defendants to produce an unredacted copy of the June 26, 2015 email exchange between Circuit Attorney Jennifer Joyce and Clohessy.

### IV. Redacted Materials Not Accounted for in the Redaction Log

Next, plaintiff states that the SNAP defendants' redaction log fails to account for several redactions in their document production. Defendants agree to correct

any errors in the log for redactions for which they have failed to account. Because defendants have no objection to correcting mistakes in the redaction log, the Court will order defendants to provide privilege log entries supporting these redactions.

**V.     Rape Crisis Center Privilege**

The SNAP defendants objected to many of plaintiff's discovery requests on the basis of a rape crisis center privilege derived from Mo. Rev. Stat. § 455.003. In their response to the instant motion, defendants first suggest that it is appropriate under Federal Rule of Evidence 501 for the Court to recognize and apply all of Missouri's state privileges to plaintiff's supplemental state law claims. The Court's subject matter jurisdiction in this case is based on federal question. 28 U.S.C. § 1331. Federal law governing the issue of privilege applies to pendent state law claims that are part of a case in which federal law claims are asserted and jurisdiction is based on 28 U.S.C. § 1331. Fed. R. Evid. 501 advisory committee's note to 1975 enactment; see Agster v. Maricopa Cnty., 422 F.3d 835, 839 (9th Cir. 2005); Continental Cas. Co. v. Under Armour, Inc., 537 F.Supp.2d 761, 768 n.3 (D. Md. 2008) (collecting cases holding that federal privilege law trumps state law for all claims in federal question cases with supplemental state law claims). Without any basis for doing so under federal precedent, the Court declines defendants' conclusory suggestion to recognize and adopt all of Missouri's state statutory and common law privileges in this case under the narrow authority of Rule 501.

Rule 501 of the Federal Rules of Evidence "authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.'" Jaffee v. Redmond, 518 U.S. 1, 8 (1996) (quoting Fed. R. Evid. 501). The recognition of any new privilege based on a confidential relationship should be

determined on a case-by-case basis. Id. (quoting the S. Rep. No. 93-1277, at 13 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7059). The Supreme Court has cautioned, however, that testimonial exclusionary rules and privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" Trammel v. United States, 445 U.S. 40, 50 (1980) (quoting Elkins v. United States, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)). A party seeking judicial recognition of a new evidentiary privilege under Rule 501 must "demonstrate with a high degree of clarity and certainty that the proposed privilege will effectively advance a public good." In re Sealed Case, 148 F.3d 1073, 1076 (D.C. Cir. 1998); see Under Seal v. United States, 755 F.3d 213, 221 (4th Cir. 2014) (stating that federal courts should create a new privilege "only after careful consideration in the face of a strong showing of need for the privilege" (quoting In re Grand Jury Investigation, 918 F.2d 374, 383 (3d Cir. 1990))). "Federal common law recognizes a privilege only in rare situations." In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 918 (8th Cir. 1997) (collecting cases).

Defendants ask the Court to adopt a privilege set forth in Mo. Rev. Stat. § 455.003. Section 455.003 requires persons employed by or volunteering at a rape crisis center "to maintain confidentiality of any information that would identify individuals served by the center and any information or records that are directly related to the advocacy services provided to such individuals." Mo. Rev. Stat. § 455.003.1. The statute also provides that any person employed by or volunteering at a rape crisis center "shall be incompetent to testify concerning any confidential

information" described in subsection one, "unless the confidentiality requirements are waived in writing by the individual served by the center." Mo. Rev. Stat. § 455.003.2.

Missouri state courts have not interpreted section 455.003 as having created an evidentiary privilege. Instead, the Missouri Supreme Court has held that a statutory section related to domestic violence shelters, found within the same chapter as and with identical language in its relevant provisions to Mo. Rev. Stat. § 455.003, "is not a recognition of a new legally privileged communication, but rather is a recognition of the confidentiality of an entire body of information." State ex rel. Hope House, Inc. v. Merrigan, 133 S.W.3d 44, 49–50 (Mo. banc 2004) (citing Mo. Rev. Stat. § 455.220). In holding thus, the court defined "privileged communication" as a "communication that is protected by law from forced disclosure," and a "privilege" as "an evidentiary rule that gives a witness the option not to disclose the fact asked for, even though it might be relevant . . . esp. when the information was originally communicated in a professional or confidential relationship," such as physician-patient and husband-wife. Id. at 49 (quoting Black's Law Dictionary (7th ed. 1999)). The court concluded that the confidentiality requirements of section 455.220 did not establish legally privileged communications. Id. at 49–50.

Based on the Missouri Supreme Court's rationale in Merrigan, thus, the confidentiality requirements for rape crisis centers set forth in section 455.003 establish a state statutorily mandated confidentiality policy, rather than create an evidentiary privilege. "Defendants should understand that 'concern for protecting confidentiality does not equate to privilege.'" Richardson v. Sexual Assault/Spouse

Abuse Research Ctr., Inc., 270 F.R.D. 223, 227 (D. Md. 2010) (quoting Spacecon Speciality Contractors, LLC v. Bensinger, No. 09-cv-02080-KLM, 2010 WL 3927783, at *4 (D. Colo. Oct. 1, 2010)). "[T]he mere fact that a statute may provide that certain documents are to be treated as confidential does not automatically establish an evidentiary privilege that completely precludes them from being discovered." Id. "Documents that are not privileged, but that are confidential, are more appropriately produced subject to a protective order." Id.; see Virmani v. Novant Health Inc., 259 F.3d 284, 287 n.4 (4th Cir. 2001) ("There is an important distinction between privilege and protection of documents, the former operating to shield the documents from production in the first instance, with the latter operating to preserve confidentiality when produced. An appropriate protective order can alleviate problems and concerns regarding both confidentiality and scope of the discovery material produced in a particular case.").

Therefore, the confidentiality requirements of Mo. Rev. Stat. § 455.003 do not establish a legally recognized evidentiary privilege. Accordingly, section 455.003 does not provide a basis for the Court to recognize a new federal privilege.[1]

To the extent that any other federal courts have recognized communications between victims of domestic violence or sexual assault and crisis center counselors

---

[1] Even if the Court were to find that section § 455.003 creates an evidentiary privilege, the scope of the privilege would not allow the SNAP defendants to refuse to respond to interrogatories seeking information regarding public statements SNAP defendants have made related to plaintiff, nor would it allow the SNAP defendants to refuse to respond to interrogatories seeking information about communications between the SNAP defendants and other defendants in this matter or third parties that are tangential, rather than directly related to advocacy services provided to victims of sexual assault. See Mo. Rev. Stat. § 455.003 (describing as confidential "any information that would identify individuals served by the center and any information or records that are directly related to the advocacy services provided to such individuals"); see, e.g., Ex. 12, Interrogatories Nos. 2–3, 5–6, 9–10, 12 [Doc. #116-12]; Exs. 13 & 14, Interrogatories Nos. 1–2, 4–5, 7, 9, 11–12 [Docs. ## 117-1, 117-2]; Ex. 15, Requests for Production Nos. 4, 8–9, 11 [Doc. #116-13].

9

as privileged, those courts recognized the privilege as an extension of the psychotherapist-patient privilege. See Jaffee, 518 U.S. at 15 ("[C]onfidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501."); Richardson, 764 F. Supp. 2d at 740 (holding that the psychotherapist-patient privilege applied to a communication with an unlicensed counselor at a domestic abuse resource center, who worked under the direct supervision of a licensed social worker); United States v. Lowe, 948 F. Supp. 97, 99 (D. Mass. 1996) (extending the psychotherapist-privilege to rape crisis counselors who were not licensed but were under the direct control and supervision of a licensed psychotherapist). Here, defendants argue for the recognition of a new privilege, rather than an extension of the existing psychotherapist-patient privilege recognized by federal common law. Moreover, unlike the aforementioned federal courts, this Court has no basis for concluding that the psychotherapist-patient privilege would apply to communications with counselors at SNAP. See United States v. Ghane, 673 F.3d 771, 783 (8th Cir. 2012) (stating that the burden placed on those wishing to invoke the benefit of the psychotherapist-patient privilege requires "a showing that '1) [the individual on the receiving end of the communications at issue is a licensed psychotherapist, 2) [the defendant's] communications . . . were confidential, and 3) the communications were made during the course of diagnosis or treatment[]'" (quoting United States v. Romo, 413 F.3d 1044, 1047 (9th Cir. 2005))); see also Jane Student 1 v. Williams, 206 F.R.D 306, 310 (S.D. Ala. 2002) (concluding that the federal psychotherapist privilege does not extend to unlicensed social workers or professional counselors because

"[t]he Court's research reveals that there is no consensus among the states that unlicensed professionals such as social workers and professional counselors are covered by the privilege; rather, there is near unanimity that the privilege does *not* extend to such unlicensed persons[]").

In summary, defendants' assertions of the purported rape crisis center privilege in response to plaintiff's discovery requests are overruled. Defendants must provide any requested information they have withheld on the basis of this privilege. The parties may request that the information be disclosed or produced subject to a protective order. See Fed. R. Civ. P. 26(c).

### VI. Documents Relating to Payments from and Communications with Attorneys at Law Firm Chackes, Carlson & Gorovsky

Plaintiff next seeks to compel the SNAP defendants to disclose documents relating to payments from and communications with attorneys at the law firm Chackes, Carlson & Gorovsky between January 1, 2005 and June 25, 2015. See Requests for Production Nos. 13 & 16 [Doc. #116-4]; Ex. 19, pp. 4, 10 & 12 [Doc. #117-3]. The complaint contains allegations against the SNAP defendants of defamation, intentional infliction of emotional distress, and conspiracy to violate plaintiff's civil rights. In the instant motion, plaintiff asserts that SNAP has referred clients to Chackes, Carlson & Gorovsky and engaged in aggressive, public promotion of the attorneys' lawsuits for years. In return, plaintiff states that SNAP has received substantial financial contributions from Chackes, Carlson & Gorovsky. This law firm represents one of the minor's parents in this case. Plaintiff states that the law firm also was pursuing a civil lawsuit against him based on false allegations at the time of the communications at issue. Plaintiff argues that the history of referrals and contributions between the lawyers of Chackes, Carlson & Gorovsky

and SNAP is relevant to this case, because it would give the SNAP defendants a financial incentive to participate in a conspiracy to secure plaintiff's conviction and to make false statements about plaintiff with reckless disregard for whether accusations against plaintiff were true.

Because the rules of discovery are broad, the burden is typically on the party resisting discovery to explain why discovery should be limited.  Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014).  That is, after the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper.  Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993); St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511–12 (N.D. Iowa 2000).

Plaintiff has demonstrated the relevance of the documents relating to payments from and communications with attorneys at Chackes, Carlson & Gorovsky.  In response, defendants have asserted boilerplate objections of work-product and common interest privilege without establishing the applicability of these privileges to the information sought.  Defendants also claim that the requests are burdensome because they lack any topic or time limitation.  Because the requests are limited to communications regarding referrals to and payments from one law firm over a set period of time, however, the Court does not find the requests to be overbroad or unduly burdensome.  With respect to the defendants' assertion of a purported rape crisis center privilege, the Court has addressed this objection above.  To the extent that the documents sought contain private financial

information, the parties may request a protective order to maintain the confidentiality of the information. See Fed. R. Civ. P. 26(c).

## VII. **Boilerplate Objections**

Lastly, plaintiff requests that the Court overrule certain boilerplate objections the SNAP defendants have asserted. In particular, plaintiff argues that the objections to the following discovery requests constitute impermissible boilerplate objections: Requests for Production Nos. 2–3, 6, 8–10 [Doc. #116-13], Interrogatories Nos. 9, 11–12 [Doc. #116-12], and Interrogatories Nos. 7, 10–12 [Docs. ##117-1-2].

The Court has addressed defendants' assertions of privilege in connection with documents and information withheld and identified in defendants' privilege or redaction logs above. The Court will not assume that defendants are withholding further documents or information on the basis of an asserted privilege or objection that are not already identified and described in their privilege log. See Fed. R. Civ. P. 11(b). In complying with this order to the extent that it overrules defendants' assertions of privilege and other objections to plaintiff's discovery requests, however, the Court reminds defendants of their obligations to comply with Federal Rules of Civil Procedure 26(b)(5), 33(b)(4), and 34(b)(2)(C). See also, e.g., Nye v. Hartford Accident & Indem. Co., Civ. No. 12-5028-JLV, 2013 WL 3107492, at *8 (D.S.D. June 18, 2013) ("Boilerplate objections are unacceptable." (internal quotations omitted)); St. Paul Reinsurance Co., 198 F.R.D. at 511–12 ("[T]he mere statement by a party that the interrogatory or request for production was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection. On the contrary, the party resisting discovery must show specifically

13

how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive." (internal quotations, citations, and brackets omitted)).

* * * * *

For the reasons discussed above,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel discovery from the SNAP defendants [Doc. #116] is **granted in part and denied in part**, as set forth above.

**IT IS FURTHER ORDERED** that the SNAP defendants shall have until **July 11, 2016**, to comply with this order and produce documents and answer interrogatories as set forth above.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of June, 2016.