IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REV. XIU HUI "JOSEPH" JIANG, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:15-cv-01008 |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| TONYA LEVETTE PORTER, ET AL., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST THE SNAP DEFENDANTS**

The SNAP Defendants have openly and publicly defied this Court's June 27 and July 19 Orders.  Having failed to persuade the Court with legal or factual arguments, they have taken their fight to the media, circulating a deceptive narrative regarding the Court's Orders in the press.  They have mischaracterized this Court's Orders and held out both the presiding U.S. District Judge and Plaintiff's lead counsel in this case by name for public criticism.  *See* Doc. 138-2; *see also Editorial: Children's Interests Are Not Served by Outing Clerical Abuse Victims, St. Louis Post-Dispatch* (July 26, 2016) (attached as Exhibit 1).

Like their original smear campaign against Fr. Jiang, *see* Doc. 1, ¶¶ 76-85, the SNAP Defendants' current media offensive against the Court and Plaintiff's counsel is false and misleading.  Unfortunately, media have uncritically accepted their false narrative without being apprised of the actual facts: (1) As the SNAP Defendants' discovery responses reveal, ***the vast majority (if not all) of the disputed discovery at issue does not pertain to unrelated third parties, but comprises documents of core relevance to this case***.  (2) The SNAP Defendants have been aware for months of the likelihood that their claim of privilege would be overruled, and with that knowledge, they ***stipulated to the agreed protective order in this case***, which provides broad

1

protections for valid privacy concerns.  (3) In many hours of discovery conferences over many months, the SNAP Defendants have *never* proposed or requested any more targeted protections for third-party privacy interests, such as targeted redactions of just the names of third-party victims or targeted Attorneys-Eyes-Only disclosures, even though such measures are frequently employed in federal court to address such privacy interests.  Rather, ***Plaintiffs' counsel*** is the only party who has ever proposed such measures.  (4) Even though they have known of these issues for months, the SNAP Defendants cynically alerted third parties that their privacy interests might be affected only at the last minute, deliberately provoking an emergency intervention motion as a ploy to advance their media blitz against this Court's Orders.  (5) With respect to the materials they *have* produced, the SNAP Defendants have engaged in a well-documented pattern of gamesmanship and discovery abuses.  Their invocation of third-party privacy interests is a transparent tactic to avoid producing the large body of relevant materials that plainly do not implicate such interests.

The SNAP Defendants' defiance of two court orders and their pattern of discovery abuse plainly warrant the imposition of sanctions under Rule 37 of the Federal Rules of Civil Procedure.

**I.     The SNAP Defendants' Belated Invocation of Third-Party Privacy Interests Is Not Made in Good Faith.  It Constitutes a Cynical Attempt to Interfere with the Orderly Progress of Discovery.**

The SNAP Defendants' current invocation of third-party privacy rights is both cynical and tactical.  At risk of wearying the Court with yet another detailed review of discovery proceedings, the facts decisively establish the SNAP Defendants' lack of good faith.  On February 5, 2016, Plaintiff served discovery requests on the SNAP Defendants.  Docs. 116-1, 116-2, 116-3, 116-4.  On March 29, the SNAP Defendants served their responses to these requests, repeatedly asserting the putative "rape crisis center privilege" under RSMo. § 455.003.  Docs. 116-5, 116-6, 116-7, 116-8.  On April 4, Plaintiff's counsel challenged the SNAP Defendants' invocation of "rape crisis

center privilege." Doc. 116-9.  The parties met and conferred three times about discovery disputes. From the beginning, the parties acknowledged that they would not come to agreement about the asserted privilege, and that it would be presented to the Court for ruling.

On April 22, the SNAP Defendants produced documents containing at least 131 pages of redactions, the majority of which contained multiple redactions.  At least 51 of these pages are entirely blacked out.  On May 11, after a second meet-and-confer, the SNAP Defendants produced their Redaction Log to explain their redactions.  Doc. 116-17.  The Redaction Log reveals that the vast majority of withheld materials **do not pertain to unrelated third-party victims**, but are documents of critical relevance to the case.  For example, the Redaction Log reflects dozens of instances where the SNAP Defendants have blacked out entire substantive communications, often comprising numerous consecutive pages of complete redaction.  *See id.*  Of these, only *two* contain the SNAP Defendant's notation that the withheld documents are "only tangentially related to Plaintiff," or "primarily regarding issues unrelated to the case." *Id.*  All others evidently constitute communications that relate principally and directly to *this case*.  Further, the blacked-out pages include SNAP's communications with the family and friends of those who levelled false accusations against Plaintiff.  *See* Doc. 116-17, at 6-8, 10-12.  The Redaction Log reflects at least 32 pages of solid redactions where the party to the withheld communication is a false accuser of Plaintiff, or a relative or "friend" of someone who has falsely accused Plaintiff.  *Id.*  As the SNAP Defendants are well aware, Plaintiff already knows the identities of his false accusers.

On May 19, Plaintiff filed his Motion to Compel against the SNAP Defendants, challenging their assertion of privilege under RSMo. § 455.003.  Doc. 116.  On May 26, the Court issued an Order overruling defendant N.M.'s assertion of the very same privilege in this case, placing the SNAP Defendants on clear notice that their assertion of the same privilege might be likewise

3

overruled. Doc. 122. On June 8, fully aware that their assertion of privilege might be overruled, the SNAP Defendants *stipulated to a protective order to govern the production of confidential information in this case*. Docs. 123, 125.

On June 27, this Court overruled the SNAP Defendants' assertion of the putative "rape crisis center privilege" and gave them until July 11 to provide documents and information. Doc. 131. The SNAP Defendants refused to comply with that Order, but filed untimely motions to reconsider and stay it. On Tuesday, July 19, this Court gave the SNAP Defendants until Friday, July 22, to comply with the June 27 Order. *Id.* The Court notified the SNAP Defendants: "**Failure to comply with this order may result in the imposition of sanctions authorized under Fed. R. Civ. P. 37(b)(2)**." *Id.* (bold in original).

On Thursday, July 21, the SNAP Defendants issued a "press release" stating that they would not comply with the Court's Order. Doc. 138-2. The press release identified the presiding U.S. District Judge and Plaintiff's attorney by name. *Id.* at 4. In the press release, the SNAP Defendants aggressively mischaracterized the Court's Order. They described the Order as directing the production of "abuse victims' names to a twice-accused predator priest." *Id.* at 2. In fact, as discussed above, the Order requires the production of dozens of pages of blacked-out communications relating to false accusers *whose identities Plaintiff already knows*.

On Friday, July 22, the SNAP Defendants provided Plaintiff with a supplemental production comprising less than one-half of a single page. Consistent with their public statements, they have otherwise continued to disobey and publicly defy this Court's order.

At 5:09 p.m. on Friday, July 22, Plaintiff's counsel received service by email of the emergency motion to intervene and for stay of the Doe-Roe intervenors, Doc. 139. Soon thereafter,

4

the SNAP Defendants filed their "Joinder in Emergency Motion to Stay Order Requiring Disclosure of Victim Information," Doc. 137.

On Monday morning, July 25, Plaintiff's counsel reached out to counsel for the Doe-Roe intervenors by both phone and email to propose an immediate meet-and-confer to discuss the issues raised in the emergency motion to intervene.  *See* July 25, 2016 Email Exchange between D. John Sauer and Michael Downey (attached as Exhibit 2).  At about 2:00 p.m. on Monday, July 25, Plaintiff's counsel conferred by telephone with counsel for the Doe-Roe intervenors, in order to discuss whether the intervenors' asserted privacy interests might be addressed by agreed-upon measures, such as targeted redactions of the names of victims, or limited Attorneys-Eyes-Only disclosures.  Counsel for Intervenors notified counsel for Plaintiff that he had only become aware of any possible privacy issues affecting his clients on Thursday, July 21, and that his clients had only become aware of these issues on Wednesday, July 20, if not later.  *Id.*  As a result, he had been forced to scramble to file the motion to intervene before the July 22 deadline for the SNAP Defendants' compliance, without clear knowledge of whether or how his clients might be affected by the Order.  *Id.*  Counsel for Intervenors advised that, as a result of this late notice, he does "***not yet know whether or to what extent [his] clients may be mentioned or involved in the documents and communications that the SNAP Defendants are withholding***."  *Id.* (emphasis added).

Thus, the SNAP Defendants have known since February 5 that Plaintiff sought information that they would withhold pursuant to "rape crisis center privilege."  They have known since April 4 that the parties would dispute this issue.  They have known since April 22 exactly which documents they would withhold pursuant to that claim of privilege, and the identities of any third parties who might be affected.  They have known since May 26 that there was a substantial likelihood that this Court would overrule that claim of privilege.  They ***stipulated***, on June 8, to a

5

protective order to address all such privacy interests that would arise in discovery. And they have known since June 27 that the Court in fact overruled their claim and ordered disclosure. Yet they did not contact any third party whose identity might be disclosed until they launched their media blitz against the Court's Order on July 21 and 22, just before defying the Order for a second time.

Further, the SNAP Defendants have *never* sought or proposed any narrower remedies to shield the identities of unrelated third parties—not in a long series of meet-and-confers with Plaintiff's counsel, nor in negotiating the stipulated protective order in this case. Instead, they have obstinately insisted on their right to impose blunderbuss redactions of the entire substance of virtually all of their communications and documents that have core relevance to this case.

Under these circumstances, the SNAP Defendants' attempt to invoke the putative privacy rights of third parties is transparently tactical and disingenuous. It plainly does not arise from any legitimate concern for third parties' privacy. Rather, it arises from a strategic attempt to invoke such privacy concerns to shield disclosure of plainly relevant, discoverable information.

**II.    The SNAP Defendants Have Violated the Court's June 27 and July 19 Discovery Orders.**

There can be no dispute that the SNAP Defendants have violated the Court's June 27, 2016 Order, Doc. 131, and the Court's July 19, 2016 Order, Doc. 136. As relevant here, the June 27 Order requires production of two categories of documents and information. First, the Court overruled the SNAP Defendants' assertion of a purported privilege under RSMo. § 455.003 and ordered them to produce the documents and information that the SNAP Defendants had withheld on that basis. *See* Doc. 131, at 6-11. Second, the Court ordered the SNAP Defendants to produce documents relating to payments from and communications with attorneys at the law firm Chackes, Carlson & Gorovsky between January 1, 2005 and June 25, 2015. *Id.* at 11-13. The Court ordered the SNAP Defendants to comply with the Order by July 11, 2016. *Id.* at 14.

6

July 11 came and went without the SNAP Defendants producing *any* additional documents or materials in response to the June 27 Order.  Rather than complying with the Order, the SNAP Defendants filed meritless motions to reconsider and stay.  Docs. 132, 134.  The Court denied these motions and again ordered the SNAP Defendants to comply by July 22, 2016.  Doc. 136.  In response to an email inquiry from Plaintiff's counsel, at 10:55 a.m. on July 13, the SNAP Defendants produced ten pages of partially unredacted materials consisting of communications that they had previously withheld solely on the basis of the work-product doctrine.  This supplemental production did not disclose any documents previously withheld based on RSMo. § 455.003.  It did not include any supplemental interrogatory responses.  It did not include any documents relating to contributions made to SNAP by attorneys at Chackes Carlson.  And it included only a single page of communications between SNAP and Ken Chackes.  SNAP000284.  Only July 22, the SNAP Defendants produced a half-page summary of payments made by Ken Chackes to SNAP between March 2012 and December 2014.  SNAP 000656.

This conduct plainly does not comply with the Court's June 27 Order.  To date, the SNAP Defendants have not produced unredacted copies of any of the documents that they have withheld on the basis of RSMo. § 455.003.  They also have not provided complete answers to any of the Interrogatories to which they objected on the basis of RSMo. § 455.003.  Since the Court's Orders, the SNAP Defendants have not produced any additional communications with attorneys at Chackes Carlson other than some (but not all) of the communications logged in the Redaction Log (Doc. 116-17).  This plainly does not comply with the June 27 Order, because the SNAP Defendants conceded that there are responsive "communications from 2005 through 2013," Doc. 132, at 2, and none of the communications in the Redaction Log predates 2013, *see* Doc. 116-17.  The half-page document purporting to identify Chackes's contributions from March 2012 to

7

December 2014 also appears not to comply with the Order. The SNAP Defendants did not produce any records reflecting payments made by Chackes prior to March 2012, even though a 2010 St. Louis Post-Dispatch article quoted Chackes as confirming that he had made payments to SNAP. Doc. 116-18, at 6. Moreover, the SNAP Defendants did not produce any records relating to payments by any other attorneys at Chackes Carlson, even though the same article indicated that at least one of Chackes's partners has made payments to SNAP as well. *Id.* Thus, it is clear that the SNAP Defendants have violated the Court's June 27 and July 19 Orders.

### III. The SNAP Defendants' Violations of the Court's Orders Have Substantially Prejudiced Plaintiff, Willful, and Part of a Pattern of Bad-Faith Discovery Conduct.

The violations of the Court's Orders described above have substantially prejudiced Plaintiff by denying him access to critical documents and information necessary to proving his claims against the SNAP Defendants. Moreover, those violations appear to have been willful and part of a larger pattern of bad-faith discovery misconduct.

#### A. The SNAP Defendants' violations have substantially prejudiced Plaintiff.

"A finding of 'prejudice' under Rule 37(b) is proper if the failure to make discovery impairs an opponent's ability to determine the factual merits of a party's claim." *In re O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003) (holding that bankruptcy court did not abuse its discretion by dismissing claim under Rule 37 for discovery violation); *see also Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 559 (8th Cir. 1992) (affirming dismissal of a party's claim pursuant to Rule 37 as a sanction for the party's violation of discovery orders); *Adams v. Trs. of N.J. Brewery Emps. Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994). Denying Plaintiff the materials and information covered by the June 27 Order seriously impairs Plaintiff's ability to prove his claims.

8

The SNAP Defendants' violation of the Court's discovery Orders severely hinders his ability to prove his civil-rights-conspiracy claim. "To establish a conspiracy under § 1985(3), [a plaintiff] must prove: (1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury." *McDonald v. City of St. Paul*, 679 F.3d 698, 706 (8th Cir. 2012). The materials that the SNAP Defendants continue to withhold are critical to proving the existence of a conspiracy, particularly a conspiracy among the SNAP Defendants themselves, or one that includes the relatives of those who have falsely accused Plaintiff. For example, an addition to internal communications, the SNAP Defendants have admitted that they are withholding 32 pages of communications with friends and family of those who have falsely accused Plaintiff. *See* Doc. 116-17, entries corresponding to SNAP000101, 103, 105-06, 108-09, 111, 114, 117-18, 123-25, 129-31, 229-30, 231-32, 241-42, 326, 300-08. Similarly, Interrogatories 9-12 sought information about the SNAP Defendants' communications with the other Defendants, Minor, and A.M. Doc. 116-1, at 8. The SNAP Defendants appear to have withheld important responsive information based on § 455.003 with respect to all of these Interrogatories. Doc. 116-12, at 4-5. Moreover, withholding the SNAP Defendants' contemporaneous communications regarding the conspiracy makes it substantially more difficult to prove that the SNAP Defendants targeted Plaintiff based on his religion and/or race. Not only might these documents and interrogatory responses *directly* support the existence of a conspiracy, but they may also provide additional leads for further discovery such as depositions of any participants in the communications who are not already parties.

The SNAP Defendants have also hindered Plaintiff's ability to establish his defamation claim. "[T]o prevail on a defamation claim, [a plaintiff] must establish: 1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the

9

requisite degree of fault, and 6) damages the plaintiff's reputation." *Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 598-99 (Mo. banc 2013) (quotation omitted).  The SNAP Defendants continue to withhold documents and information necessary to establish that their statements were false, and that they acted with "the requisite degree of fault." *Id.*  To prove this element, Plaintiff must show that the SNAP Defendants were at least negligent as to the truth of their publications. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000).  The withheld documents would be highly relevant to determining whether the SNAP Defendants knew or should have known that their public accusations against Plaintiff were false.  Similarly, Interrogatories 3 and 5—to which the SNAP Defendants objected based on § 455.003—specifically inquire about the factual basis for the SNAP Defendants' public statements and whether they conducted any pre-publication investigation to determine whether those statements were accurate. Doc. 116-12, at 2-3.  Moreover, because the withheld materials include numerous communications with the false accusers themselves and/or their relatives, withholding these materials also makes it substantially more difficult to prove that the SNAP Defendants' statements were actually false.

### B. The SNAP Defendants have willfully defied the Court's Orders.

The SNAP Defendants' violations of the Court's Orders have been willful.  "Willful as used in the context of a failure to comply with a court order implies a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance." *Omaha Indian Tribe v. Tract I-Blackbird Bend Area*, 933 F.2d 1462, 1468-69 (8th Cir. 1991) (quotation and ellipsis omitted).  Here, there is no question that the SNAP Defendants have consciously and intentionally violated the Court's Orders.  They convened a public "press conference" to announce that they would defy the Court's Orders.  Joel Currier, *Victim advocates plan to defy court order in lawsuit filed by once-accused St. Louis priest*, St. Louis Post-Dispatch (July 21, 2016), Doc.

138-1; Kevin Killeen, *Defying Judge, SNAP Won't Budge*, KMOX (July 27, 2016) (attached as Exhibit 3). It is difficult to imagine more willful defiance of a court order. They have, in essence, unilaterally declared themselves above the law and this Court's Orders.

### C. The SNAP Defendants' defiance of the Court's Orders is part of a larger pattern of bad-faith discovery misconduct.

Plaintiff's prior pleadings have outlined the gamesmanship and evasion that have characterized virtually every aspect of the SNAP Defendants' conduct during discovery. *See* Doc. 116, at 1-2; Doc. 129, at 1-2; Doc. 133, at 1; Doc. 135, at 1. This conduct has violated numerous Federal Rules and has imposed extraordinary burdens on Plaintiff.

In several instances, information provided by persons other than the SNAP Defendants has enabled Plaintiff to assess the completeness of the SNAP Defendants' production. Again and again, such disclosures from other sources have revealed critical omissions from the SNAP Defendants' productions. For example, Defendant N.M. produced a series of emails between N.M. and Defendant Barbara Dorris that occurred on July 10 and July 14, 2015. N.M.000113-14. The SNAP Defendants did not produce these emails, nor do any entries in the Redaction Log identify communications occurring on July 10 or July 14, 2015. *See* Doc. 116-17. Similarly, a non-party provided to Plaintiff an email received from Defendant David Clohessy on April 21, 2016, in which Clohessy used the moniker "Fr. J" to refer to the Plaintiff, instead of "Jiang," which he was then using as his sole search term. P_001125. Plaintiff's counsel raised the issues several times, demanding that the SNAP Defendants search their ESI using any such monikers as well. But the SNAP Defendants have never produced this email. Instead, they produced a similar email sent the same day to a different non-party. SNAP000655. So it is evident that they have never actually conducted the additional requested searches, and may still be withholding responsive documents due to this gamesmanship. Again, another non-party has just disclosed to Plaintiff a June 26, 2015

11

email from Barbara Dorris urging the non-party to post comments on a St. Louis Post-Dispatch article about this case.  *See* Exhibit 4.  The SNAP Defendants have never produced this email.

All of these emails were sent after the filing of this lawsuit, and thus the SNAP Defendants were on clear notice of their obligation to take reasonable steps to preserve the documents.  *See* Fed. R. Civ. P. 37(e).  And all of these emails are plainly relevant to Plaintiff's discovery requests.  These systematic omissions undermine the good faith of the SNAP Defendants' conduct.

### III. The Court Should Impose Appropriate Sanctions to Cure the Prejudice Caused by the SNAP Defendants' Defiance of the Court's Orders, and to Induce the SNAP Defendants to Respect and Abide by the Court's Future Orders in This Case.

Federal Rule of Civil Procedure 37(b)(2) provides the Court with a range of possible sanctions for a party's failure to comply with its discovery orders.  "[D]iscovery orders are meant to be followed."  *S. New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quotation omitted).  "The extensive sanctions available to courts under Rule 37 for failure to comply with discovery orders are necessary to compensate the court and parties, facilitate discovery and deter abuse of the discovery process."  *U.S. v. One 1999 Forty Seven Foot Fountain Motor Vessel,* 240 F.R.D. 695, 698 (S.D. Fla. 2007).

Here, the SNAP Defendants' misconduct warrants the most serious sanction authorized by Rule 37(b)(2), that is, the entry of default judgment against them.  *See* Fed. R. Civ. P. 37(b)(2)(A)(vi).  A court may employ the entry of default judgment as a sanction where there is "(1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party."  *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817 (8th Cir. 2001) (quotation omitted).  "[I]t is appropriate to strike pleadings and enter default judgment against parties who violate discovery orders."  *Motor Vessel*, 240 F.R.D. at 698.  Where a party has violated a court order deliberately or in bad faith, such an extreme sanction is appropriate even if a less extreme

12

sanction would suffice. *See United States v. Eleven Million Seventy-One Thousand One Hundred and Eighty-Eight Dollars and Sixty-Four Cents*, No. 15-1743, --- F.3d ---, 2016 WL 3144679, at *2 (8th Cir. June 6, 2016). The SNAP Defendants' conduct also warrants the more targeted sanctions discussed below, as well as any additional sanctions imposed by the Court in its exercise of sound discretion.

      **A. Pursuant to Rule 37(b)(2)(A)(i), the Court should direct that certain specific factual matters directly related to the withheld materials have been established for the purposes of this action.**

Rule 37(b)(2)(A)(i) permits the Court to "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). Pursuant to this provision, "a court may instruct the jury to presume the truth of a factual allegation from a party's failure to produce material relevant to that allegation." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 116 (2d Cir. 2013); *see also Fencorp, Co. v. Ohio Kentucky Oil Corp.*, 675 F.3d 933, 942 (6th Cir. 2012) (affirming Rule 37(b)(2)(A)(i) sanction where party failed to comply with discovery orders).

As described in Part III.A. above, the SNAP Defendants' violations of the Court's discovery orders has directly and severely hindered Plaintiff's ability to establish certain specific elements of two of his claims against the SNAP Defendants. To cure this significant prejudice, the Court should direct that facts supporting these elements have been established for the purpose of this action. Fed. R. Civ. P. 37(b)(2)(A)(i). In particular, the Court should direct that the following facts have been established: (1) the SNAP Defendants conspired with one another and with others to obtain the conviction of Plaintiff on charges of abuse; (2) the SNAP Defendants entered into this conspiracy due to discriminatory animus against Plaintiff based on his religion, religious vocation, race, and national origin; (3) the SNAP Defendants' public statements about

13

Plaintiff were false; and (4) the SNAP Defendants did not conduct any inquiry into the truth or falsity of their public statements regarding Plaintiff, but made their statements negligently and with reckless disregard for the truth.  As described in Part III.A, these factual matters relate directly to the documents and interrogatory responses that the SNAP Defendants continue to withhold, in violation of the Court's discovery orders.  Without such a sanction, the SNAP Defendants may be able to use defiance of the Court's Orders to prevent Plaintiff from proving his claims at trial.  Such an outcome would be a miscarriage of justice.

      **B.**      **The Court should stay all discovery propounded by the SNAP Defendants until they comply fully with the Court's June 27 and July 19 Orders.**

Rule 37(b)(2)(A)(iv) authorizes the Court to sanction the SNAP Defendants by "prohibiting [them] from engaging in further discovery."  *Static Control Components, Inc. v. Cummix, Inc.*, No. 1:08-cv-928, 2011 WL 5864701, at *4 (M.D.N.C. Nov. 22, 2011).  Such a sanction is especially appropriate here.  The SNAP Defendants have refused to provide meaningful responses to Plaintiff's discovery requests, withholding documents and information critical to Plaintiff's claims, in defiance of multiple Orders from the Court.  At the same time, they are aggressively pursuing discovery against the Plaintiff.  They have served both interrogatories and document requests upon Plaintiff, whose responses are currently due (by agreement of the parties) on August 8 and August 12, respectively; and they have noticed Plaintiff's deposition for August 16, 2016.  *See* Exhibit 5 (SNAP Interrogatories to Plaintiff); Exhibit 6 (SNAP Document Requests to Plaintiff); Exhibit 7 (SNAP Notice of Plaintiff's Deposition).  The Court should not permit the SNAP Defendants to use their defiance of the Court's Orders as a means for rendering discovery in this case entirely unilateral.  The Court should stay all discovery requests propounded by the SNAP Defendants, including any notices of deposition, and prohibit the SNAP Defendants from

participating in any discovery against Plaintiff, until they fully comply with the Court's June 27 and July 19 Orders.  *See* Fed. R. Civ. P. 37(b)(2)(A)(iv).

### C. The Court should order the SNAP Defendants to pay Plaintiff's reasonable attorney's fees incurred due to their willful violations of the Court's Orders.

Rule 37(b)(2)(C) provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  Here, the SNAP Defendants' defiance of the Court's Orders is plainly not justified, nor would a fee award be otherwise unjust.  The SNAP Defendants' defiance of the Court's Orders have necessitated his attorneys to complete numerous additional tasks, including but not limited to drafting an opposition to the SNAP Defendants' first motion for reconsideration (Doc. 133), drafting an opposition to their first motion to stay (Doc. 135), drafting an opposition to their motion to join the motion to intervene (Doc. 140), drafting this Motion for Sanctions, and engaging in extensive efforts to procure documents that the SNAP Defendants have withheld through evasion and gamesmanship. If the Court decides to impose such a sanction, Plaintiff requests the opportunity to submit additional information reflecting the number of hours and the appropriate billing rates.  *See Davis v. MCI Communications Servs., Inc.*, 421 F. Supp.2d 1178, 1187 n.8 (E.D. Mo. 2006).

## **CONCLUSION**

For the reasons stated above, the Court should enter appropriate sanctions against the SNAP Defendants for the serious violations of the Court's June 27 and July 19 Orders, and grant such other and further relief as the Court deems just and proper.

15


Dated: July 28, 2016

        Respectfully Submitted,

        James Otis Law Group, LLC

        */s/ D. John Sauer*
        D. John Sauer, 58721MO
        Michael Martinich-Sauter, 66065MO
        12977 North Forty Drive, Suite 214
        St. Louis, Missouri 63141
        Telephone: (314) 682-6067
        jsauer@jamesotis.com
        mmartinich@jamesotis.com

        *Attorneys for Plaintiff Rev. Xiu Hui "Joseph" Jiang*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via the Court's electronic-filing system, on July 28, 2016, on:

J. Brent Dulle
Associate City Counselor
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
DulleB@stlouis-mo.gov
*Attorneys for Defendants Porter, Pitterle, and City of St. Louis*

Kenneth M. Chackes
Nicole E. Gorovsky
Chackes, Carlson & Gorovsky
906 Olive Street, Suite 200
St. Louis, Missouri 63101
kchackes@cch-law.com
ngorovsky@cch-law.com
*Attorneys for Defendant N.M.*

Amy Lorenz-Moser
Daniel J. Carpenter
Carpenter Moser, LLC
1716 Hidden Creek Court, Suite 101
St. Louis, Missouri 63131
amy@carpentermoser.com
dan@carpentermoser.com
*Attorneys for Defendants SNAP, Clohessy, and Dorris*

Michael P. Downey
Raphael S. Nemes
Downey Law Group, LLC
49 N. Gore Ave., Suite 2
St. Louis, Missouri 63119
mdowney@downeylawgroup.com
rnemes@downeylawgroup.com
*Attorneys for Intervenors*

                                                                                              */s/ D. John Sauer*