EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| REV. XIU HUI "JOSEPH" JIANG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-01008 |
| | ) | |
| TONYA LEVETTE PORTER, | ) | |
| JAIMIE D. PITTERLE, | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| A.M.,  N.M.,  SURVIVORS  NETWORK | ) | |
| OF THOSE ABUSED BY PRIESTS, | ) | |
| DAVID CLOHESSY, and | ) | |
| BARBARA DORRIS, | ) | |
| | ) | |
| Defendants. | ) | |

### SNAP'S COMBINED MOTION TO STAY RESPONSE TO SANCTIONS MOTION PENDING RESOLUTION OF THIS MOTION, FOR INTERLOCUTORY APPEAL OF DISCOVERY ORDER REGARDING RAPE CRISIS PRIVILEGE/CONFIDENTIALITY AND MEMORANDUM IN SUPPORT

### Introduction and Questions for Certification

When it comes to abuse and statutory protection of victims in Missouri, the Missouri

Supreme Court in *State ex rel. Hope House, Inc. v. Merrigan*, 133 S.W.3d 44, 46-47 (Mo. banc

2004), recognized that "strict confidentiality is an essential component for protecting women and

children seeking refuge from their abusers …."  When it comes to production in discovery of

statutorily "confidential" information relating to abuse victims, the *Merrigan* court held that such

confidentiality, while not an evidentiary privilege, barred the discovery. *Id.* at 48-49 ("Although

trial courts are generally vested with broad discretion regarding discovery, requiring Hope House to

produce statutorily protected information is an abuse of discretion").

The Court here, in its June 27, 2016 Order (Doc. 131 at 8), also recognized that Missouri

interest: "Based on the Missouri Supreme Court's rationale in *Merrigan*, thus, the confidentiality

requirements for rape crisis centers set forth in section 455.003 establish a state statutorily

1

mandated confidentiality policy, rather than create an evidentiary privilege."  The Court here, however, held that because there was not a federal "evidentiary" privilege, the production of such "confidential" information to the alleged abuser was proper, albeit with a protective order.

There is thus respectfully a conflict between the ultimate holding in *Merrigan* denying production of such confidential information and this Court's Order recognizing the confidentiality but ordering production.  The Eighth Circuit, as explained next, has also recognized the issues surrounding federal privilege and state-law confidentiality, but declined to address the issue.

In 2014, the Eighth Circuit recognized that the interplay between privilege under Rule 501 and a state statute requiring "confidentiality" posed "significant and complex" issues regarding discovery of same but declined to answer the question, quashing the discovery of such Missouri statutory "confidential" as irrelevant. *See In re Lombardi,* 741 F.3d 888, 894-95 (8th Cir. 2014).  It also recognized that while "Discovery orders likewise are not ordinarily appealable," where discovery may "interfere with important state interests," appellate review may lie. *Id.* at 895 (granting writ of mandamus).  That very issue, which the Eighth Circuit declined to address in 2014, is now front and center in this case, and given the "important state interests," appellate review also lies here.

It is with these important state-law confidentiality interests of victims acknowledged, and with the conflict between federal privilege and such state-law confidentiality recognized as "significant and complex" when it comes to production of such information, that SNAP respectfully files this motion for certification for interlocutory appeal.  In light of the Court's June 28, 2016 and July 19, 2016 orders compelling production to the alleged abuser of Rape Crisis communications and documents between SNAP and the sexual abuse victims, the apparent conflict between this Court's holding and the Missouri Supreme Court's holding in *Merrigan,* and the

2

Eighth Circuit's recognition of the issue but failure to resolve it in 2014, SNAP poses the following

questions for certification to the Eight Circuit:

> 1.   When an alleged sexual abuser files a federal lawsuit against his victims and
> a Missouri Rape Crisis Center with which they communicated, and when the alleged
> abuser serves discovery seeking the content of state-law confidential rape-crisis
> communications and documents from the Missouri Rape Crisis Center, may the alleged
> abuser obtain in discovery such state-statutorily "confidential" information?[1]

**A.  The Effect of Certification on the Pending Sanctions Motion and Intervention.**

SNAP files this motion understanding that plaintiff has filed a pending sanctions motion

regarding SNAP's alleged violation of the Court's July 19 Order.  This motion for certification for

appeal, if granted, would moot that motion and obtain appellate guidance on the important issues of

federal first impression herein.  It would also address both the Intervenors' and SNAP defendants'

request to stay the case pending resolution of the issue.  Plaintiff has opposed both motions to stay

but has simultaneously contended, without any Court Order, that ***plaintiff's*** obligation to provide

discovery responses or appear for deposition are stayed.  He has thus refused to provide discovery

responses or appear for any depositions while his sanctions motion is pending.

The SNAP defendants' counsel proposed -- in light of plaintiff's position that his discovery

obligations were stayed, in light of Intervenors' and the SNAP defendants' motions to stay pending

resolution of the Intervenors' motion, and in light of this motion for interlocutory certification –

that the parties agree to propose to the Court that the entire case be stayed pending resolution of the

---

[1] In other words, do the federal privilege rules and civil-lawsuit discovery rights for an alleged-abuser plaintiff, who filed the lawsuit against his alleged victims, as well as a Missouri Rape Crisis Center, and served discovery seeking such "confidential" information under state law, trump the state-law, statutorily-mandated confidentiality of Rape Crisis Center information found "necessary" to protect victims? *Merrigan,* 133 S.W.3d at 47-48.

certification issue and Intervenors' motion; we also proposed that the Motion for Sanctions be withdrawn without prejudice pending ruling on the certification motion, as same would moot the sanctions issue, if granted, would obviate plaintiff's motions for protective order, and would thus save the Court and parties' work. *See* 8.2.16 Carpenter-Sauer E-Mails, Ex. 1.  Plaintiff's counsel, however, refused to agree. *See* 8.2.16 Carpenter- Sauer E-Mail, Ex. 1.

Thus, as it stands, plaintiff is refusing to appear for deposition or provide discovery responses, as explained below, based on his sanction motion's request to preclude any discovery on him by SNAP.  He plans to file protective order motions regarding same.  Although the SNAP defendants' certification and discovery issue goes to merely one of a myriad of discovery requests for which it has fully responded and provided numerous documents to fulfill other requests and full answers, plaintiff contends that this one request obviates his need to respond to ***any*** discovery at all or appear for ***any*** depositions at all.  Also as it stands, the SNAP defendants will need to respond to the sanctions motion, although resolution of the certification motion will potentially moot that issue.

Accordingly, in addition to certification, the SNAP defendants also request that its response to the sanctions motion be stayed until seven days after the Court rules on the certification motion and that all discovery be stayed pending this determination.  This would eliminate the need for the Court to decide the protective order motions plaintiff intends to file regarding discovery on him, eliminate the need to determine the intervenor motions at this time, and eliminate the need to consider the sanctions issue at this time.

Ironically, while aggressively pursuing discovery from SNAP and the other defendants he sued, including motions to compel and for sanctions, and while accusing SNAP of discovery abuse, plaintiff has now refused to answer ***any*** discovery served by SNAP or appear for his long-noticed deposition on July 27, 2016 or other depositions SNAP proposes.  Plaintiff's sworn discovery

4

responses and production, including his deposition, will be the touchstone moment in this case as to whether it will proceed or whether it will prove to be the harassment tactic defendants contend it is. That will answer whether he will in fact testify, assert his Fifth Amendment rights, or whether he will produce what defendants believe will prove to be highly incriminating and reveal the true impetus behind this case.  Not surprisingly, plaintiff first delayed his responses and delayed his appearance for deposition, and now refuses to participate in discovery on him *at all*, showing this case for what it is.

SNAP served discovery on plaintiff in late June 2016.  On July 20, 2016, plaintiff's counsel, citing "significant conflicts" the week of July 25, 2016, requested an extension for plaintiff's answers to SNAP's written discovery, due July 25 and 29, until August 8 and 12. *See* 7.20.16 E-Mail.  Plaintiff's counsel also canceled the deposition of plaintiff, set for July 27, 2016, due to the same "significant conflicts." *Id.*  It was agreed that this discovery would occur in early August.

Although plaintiff's counsel stated that "significant conflicts" the week of July 25 would make "finalizing our responses difficult" and prevented plaintiff's deposition from proceeding on July 27, during those same days plaintiff finalized three separate pleadings *in this case*, totaling more than 30 pages, including a sanctions motion.  *See* 7/25/16 Doc. 138, 11 pages, 7/26/16 Doc. 139, 5 pages, 7/28/16 Doc. 141, 15 pages).  The 15-page sanctions motion, "finalized" and filed July 28, 2016, was one day *after* the July 27, 2016 deposition date claimed to be too busy to attend and one day before the second set of discovery responses were due that plaintiff could not "finalize."  In reality, under the Local Rules, the 16 pages of motion responses (Docs. 138 and 139), which plaintiff finalized and filed on July 25 and 26, were not due until *one week later*, August 2.  They certainly were not due during the week claimed to be too busy to attend the deposition or finalize discovery responses but during which plaintiff finalized 31 pages of

pleadings *in this case.*  The 15-page sanctions motion obviously had no due date but was filed that same week too, and requested that he be excused from answering any discovery.

In light of the content and volume of the three pleadings plaintiff's counsel finalized and filed that same week, which were addressed to discovery *plaintiff* wanted from *SNAP*, the legitimacy of the extensions is undermined.  Why was plaintiff's counsel able to "finalize" and file more than 30 pages of responses and motions, not even due that week, when he was unable to "finalize" discovery responses or appear for plaintiff's deposition those same days?

 What happened next, however, confirmed what really is happening.  Plaintiff's delay in answering written discovery and in postponing his July 27, 2016 deposition have now morphed into a full-scale refusal to answer *any* discovery or appear for *any* depositions.  Citing his July 28, 2016 sanction motion's request to preclude the SNAP defendants from conducting *any* discovery (based on one discovery issue), plaintiff is now refusing to serve *any* discovery responses or appear for *any* depositions.  Counsel stated on August 1, 2015:

> As you are aware, on Thursday, July 28 -- the day before you sent this scheduling request -- we filed a motion for sanctions asking the Court to stay your clients' participation in discovery until they comply with pending Court orders and provide full responses to our discovery requests.  Accordingly, please be advised that if you attempt to schedule the third-party deposition of Mr. Hannegan, we will promptly notify the Court and apply for a protective order.

*See* 8.1.16 E-Mail, Ex. 2.

Thus, rather than respond to the written discovery or appear for deposition, both of which would have *already* occurred but for extensions agreed to based on alleged "significant conflicts," plaintiff's counsel has stated that he will seek a protective order rather than comply.  If the discovery had been served on plaintiff simultaneously with his discovery to SNAP, shortly thereafter, before these issues arose, or if he had not sought extensions or claimed a "conflict," he would have *already* been required to answer and appear for deposition.

Plaintiff's conduct in first delaying, and then wholesale blocking, the touchstone discovery of him, while simultaneously aggressively enforcing discovery from the SNAP defendants, speaks more loudly than words.

### B.  Certification is Necessary

The "significant and complex" issues raised in *In re Lombardi* regarding the interplay between state-law confidentiality and federal privilege, yet not decided, are now presented by this case and issue, warranting interlocutory appeal.  *In re Lombardi* also recognized "important state interests" that merited interlocutory appellate review in that case, and as explained below and above, those are clearly present here.

The Court should certify this important issue for immediate appellate review.

<u>Argument</u>

## I.    The Court Should Certify The Question for Interlocutory Appeal

This federal, first-impression discovery issue poses significant and important questions regarding the interplay between federal privilege rules regarding discovery in federal court of information deemed confidential and protected under a state statute and Missouri Supreme Court decision.  The issue is magnified by the important state-interest safety concerns underlying the state-statutory confidentiality to protect victims from the alleged abuser and the unusual nature of this case, with the alleged abuser suing the victims in federal court and using discovery to obtain that confidential information.

If an alleged abuser could merely file a ***federal*** lawsuit against his victims and Rape Crisis Centers, serve discovery, and thereby obtain that information, deemed confidential for safety reasons, the state interests would be subverted via an exploited loophole.  If this lawsuit were filed in state court, *Merrigan* would control and prevent the discovery. *Merrigan,* 133 S.W.3d at 50 (

7

"Although trial courts are generally vested with broad discretion regarding discovery, requiring Hope House to produce statutorily protected information is an abuse of discretion").

Certification will also provide the Eighth Circuit with the opportunity to address the "significant and complex" issues regarding state "confidentiality" and federal "privilege" it recognized in 2014, but declined to answer. *See In re Lombardi,* 741 F.3d 888, 894-95 (8th Cir. 2014).  It should now be answered.  While the Court's Order framed the issue as the creation of a new privilege under federal law, the information ordered produced was, in the Order, acknowledged to be statutorily "confidential" under substantive Missouri law, specifically R.S.Mo. 455.003(1).  The interplay and conflict between state-law, statutory "confidentiality," on one hand, and federal "privilege" law under Rule 501, on the other, is an apparent issue of first impression in this Circuit.  As mentioned above, the issue was raised and recognized by the Eighth Circuit in 2014, but not answered.  *See In re Lombardi,* 741 F.3d 888, 894-95 (8th Cir. 2014).  It is now, respectfully, necessary.

The language, rights and obligations of the statute at issue, in terms of required confidentiality, highlights the conflict between "confidentiality" under state law and "privilege" under discovery and evidence in federal court.  Specifically, under 455.003(1), A rape crisis center shall:  (1) Require persons employed by or volunteering services to the rape crisis center to maintain confidentiality of any information that would identify individuals served by the center and any information or records that are directly related to the advocacy services provided to such individuals; and (2) Prior to providing any advocacy services, inform individuals served by the rape crisis center of the nature and scope of the confidentiality requirements of subdivision (1) of this subsection.  Further under 455.003(2): "Any person employed by or volunteering services to a rape crisis center for victims of sexual assault shall be incompetent to testify concerning any confidential

8

information in subsection 1 of this section, unless the confidentiality requirements are waived in writing by the individual served by the center."

As for the confidentiality under the statute at issue here, SNAP was not able to locate any Eighth Circuit authority addressing R.S.Mo. 455.003 or its rape crisis center confidentiality provisions or R.S.Mo. 455.003 at all.  As mention, *In re Lombardi* recognized the nearly identical issue but did not resolve it.  This Court's Order was the only Eighth Circuit district court order located ever addressing R.S.Mo. 455.003.  Courts elsewhere, however, such as the court in *Awalt v. Marketti,* 287 F.R.D. 409, 423(N.D. Ill. 2012), reached a different result under Illinois' similar rape crisis statute.

While the Court recognized this confidentiality policy, it found that production to the alleged abuser/plaintiff was proper because it was not federally privileged.  The Court should thus certify this issue for interlocutory appeal under Section 1292(b).

### A.  The Requirements of 28 U.S.C. 1292

The requirements of 28 U.S.C. 1292 are satisfied with this important issue.  Under 28 U.S.C. 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order....

28 U.S.C. § 1292(b).  "Section 1292(b) establishes three criteria for certification: the district court must be of the opinion that (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation." *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994).

All three requirements are satisfied here.

**A.  There is a Controlling Question of Law Here**

First, this issue involves a "controlling question of law," namely, when it comes to production, does FRE 501 "privilege" control or do Missouri's "confidentiality" requirements apply under R.S.Mo. 455.003(2).  This is a "controlling question of law." *White*, 43 F.3d at 377, n. 3 (stating that appellants' argument that files were protected against discovery by "some privilege" presents a controlling legal issue as to the existence of the privilege).  This is also controlling as to the intervenors' motion to protect their state-law confidentiality interests.

**B.  There is a Substantial Ground for Difference of Opinion**

Second, there is a substantial ground for difference of opinion as to whether a statutory confidentiality trumps a determination of no evidentiary privilege under FRE 501.  The statute requires that SNAP, as a Rape Crisis Center, "maintain confidentiality of any information that would identify individuals served by the center and any information or records that are directly related to the advocacy services provided to such individuals." R.S.Mo. 455.003.  The Court's Order found:  "Based on the Missouri Supreme Court's rationale in *Merrigan*, thus, the confidentiality requirements for rape crisis centers set forth in section 455.003 establish a state statutorily mandated confidentiality policy, rather than create an evidentiary privilege." Order at 8.  Thus, the Court found that although there is a "statutory mandated confidentiality policy," it did not apply to create a federal privilege from production but rather merited protection via a protective order.  As mentioned above, this respectfully conflicts with the Missouri Supreme Court's ultimate holding in *Merrigan.*

Because the alleged abuser is within the category of people from whom the Missouri legislature determined the rape crisis center victims require protection, the Legislature determined that such information required confidentiality.  In distinguishing "privilege" and "confidentiality," however, the Court's Order respectfully discounts the state-law confidentiality required by the

10

statute to protect victims and others when it comes to reporting rape.  This reality is underscored by the unusual nature of this case with the alleged abuser suing the alleged victims and others.  An abuser, under the Court's rationale, desiring to locate his victims and witnesses, contrary to the protections afforded, could get around the statutory rape crisis center confidentiality by simply suing the victims civilly, serving a request for production and thereby obtain the confidential information, protective order or not.

As mentioned, a similar issue arose recently in the Eighth Circuit case of *In re Lombardi,* 741 F.3d 888, 894-95 (8th Cir. 2014).  In that case, a plaintiff in a civil case obtained an order compelling the Missouri Director of the Department of Corrections to reveal the identities of physicians, pharmacists and laboratories prescribing and providing Missouri's lethal injection chemicals.  Under state statute, however, the "identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential." Mo.Rev.Stat. § 546.720.2.  The Director argued that such information was "privileged" because it was "confidential" under the statute, just as SNAP argues here.

The Eighth Circuit, after noting these arguments, declined to reach the issue, stating: "The privilege issues are significant and complex, but we express no view on them, because it is clear and indisputable that the discovery ordered by the district court is not relevant to any claim that should survive a motion to dismiss, and that the Director has no other adequate means to attain the relief he desires." *In re Lombardi,* 741 F.3d at 895.  The Eighth Circuit thus granted the writ of mandamus not requiring production of the identities, but not because it was "confidential" or "privileged," although it recognized the issue as "significant and complex."[2] That issue, unresolved

---

[2] The SNAP defendants understand that direct mandamus under F.R.A.P. 21 appears to lie under the rationale in *Lombardi* but elected to first present its positions, including *Lombardi,* for certification under 28 U.S.C. 1292, given the similarity in the issue the Eighth Circuit recognized but did not need to answer.

in *In re Lombardi,* is now presented here, meriting certification for appellate clarification and decision.

The Missouri Supreme Court, in *State ex rel. Hope House, Inc. v. Merrigan*, 133 S.W.3d 44, 49–50 (Mo. banc 2004), also recognized the interplay between privilege and confidentiality under the statute, finding that the confidentiality was actually broader than evidentiary privilege.  It stated:  "Section 455.220.1(5) codifies the strict confidentiality policy necessary for shelters effectively to provide a safe harbor for domestic violence victims. The statute makes shelters: Require persons employed by or volunteering services to the shelter to maintain confidentiality of any information that would identify individuals served by the shelter and any information or records that are directly related to the advocacy services provided to such individuals." *Merrigan,* 133 S.W.3d at 49-50.

*Merrigan* also stated: "Furthermore, unlike the limited scope of the privileged communications referenced in section 210.140 [Missouri's evidentiary privilege statute], the section 455.220 confidentiality requirements also apply to an array of information beyond any communications between a resident and shelter worker. Even the resident's identity must remain confidential. Finally, the confidentiality requirements may not be waived at any time except at the option of the resident when testimony is ordered. Section 455.220.2." *Id.*  Thus, the Missouri Supreme Court found that the state-statute's "confidentiality" requirements and guarantees override evidentiary privilege when it comes to production.

It is important to note that here neither the victims nor Rape Crisis Center, which cannot waive the confidentiality, placed the communications or information at issue by suing.  Waiver is thus not present.  Instead, plaintiff, the alleged abuser, is attempting to place the confidential information at issue by suing the victims and Rape Crisis Center.  That is a critical distinction and

12

would create a loophole for those abusers to obtain confidential information that is statutorily protected to expressly protect the victims.

Further supporting the "substantial ground for difference of opinion" second element is the decision in *Awalt v. Marketti,* 287 F.R.D. 409, 423 (N.D. Ill. 2012), which recognized that a similar Illinois Rape Crisis Center statute "protects these documents from disclosure."  Illinois statutory law "protect[s] victims of rape from public disclosure of statements they make in confidence to counselors or organizations established to help them.'735 ILCS 5/8-802.1. This state-law prohibition on disclosure is absolute and cannot be waived through litigation conduct. *See Schabell v. Nozawa-Joffe*, No. 08 C 50018, 2010 WL 1704471, *1-*2 (N.D. Ill. April 278, 2010); *People v. Foggy*, 521 N.E.2d 86, 91 (Ill. 1998) ('Moreover, as the appellate court noted in this case, the legislature originally allowed only a qualified privilege for communications between sexual assault counselors and victims but later decided to strengthen the privilege and make it absolute.'). *See U.S. v. Lowe*, 948 F.Supp. 97, 99 (Mass. 1996) (holding waiver, but stating: 'In light of the policies expressed in *Jaffee*, this Court agrees that a client of a rape counseling center holds some form of a federal privilege for communications with a rape crisis counsellor, a privilege that the client can waive"). n. 3 Citing *Whalen v. Roe*, 429 U.S. 589, 599, 604, 97 S.Ct. 869, 876, 878-79, 51 L.Ed.2d 64 (1977).'" *Id.* at 422-24.

The issues here – the interplay between a state statute declaring information "confidential" and "privilege" under FRE 501 -- which the Eighth Circuit in 2014 recognized were "significant and complex" but declined to reach and the Missouri Supreme Court did address -- are now front and center with this issue.  This respectfully supports the second requirement on 28 U.S.C. 1292 in that there is a substantial ground for difference of opinion.

### C.  Review Will Materially Advance the Ultimate Termination of the Litigation

Finally, the determination of this issue will materially advance the ultimate termination of this litigation. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 399 (8th Cir. 1987), for example, involved two similar issues: (1) whether the work product doctrine or attorney-client privilege applied to corporate risk management documents prepared by nonlawyer corporate officials and (2) whether Rule 26(b)(2) of the Federal Rules of Civil Procedure limits discovery of corporate risk management documents that relate to insurance considerations. The Eighth Circuit found that 28 U.S.C. 1292 was satisfied regarding those privilege issues of first impression and would materially advance the ultimate termination of the litigation.

<u>Conclusion</u>

Accordingly, SNAP respectfully requests that the Court certify this issue for immediate, interlocutory appeal. In 2014, the Eighth Circuit recognized the "significant and complex" issues surround the "privilege" issues under FRE 501 and "confidentiality" requirements under a Missouri state statute but declined to reach the issue. Now, that very issue is ripe for clarification here, warranting certification for appeal. The "important state interests" of Missouri in protecting the confidentiality of Rape Crisis Center information also warrants certification for appeal under *In re Lombardi.* The SNAP defendants also respectfully request that (1) discovery be stayed pending determination of certification; (2) that the response to the sanctions motion be stayed until seven days after this issue is resolved; and (3) that ruling on the Intervenors' motion be stayed pending resolution of this issue.

14

Respectfully submitted:

CARPENTER MOSER, LLC

*/s/*  Daniel J. Carpenter

Daniel J. Carpenter,
#41571 Amy Lorenz-
Moser, #49791
1716 Hidden Creek Court, Ste
101 St. Louis, MO 63131
Telephone:  (314) 312-4979
dan@carpentermoser.com
amy@carpentermoser.com

*Attorneys for Defendants SNAP, David*

*Clohessy, and Barbara Dorris*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August, 2016, a copy of the foregoing was electronically filed with the Court, and will be sent electronically by the Court to counsel of Record:

*/s/*  Daniel J. Carpenter