IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REV. XIU HUI "JOSEPH" JIANG, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:15-cv-01008 |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| TONYA LEVETTE PORTER, ET AL., ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF D. JOHN SAUER**

I, D. John Sauer, hereby declare:

1. Until January 2017, I was lead counsel for the Plaintiff in the above-captioned case.

2. I have reviewed the document titled "Defendant N.M.'s Motion for Reconsideration and to Alter or Amend Order Granting Sanctions Against Defendant," along with attached exhibits, Doc. 218 (the "Motion for Reconsideration"). This document contains several statements that are incorrect and that misrepresent the course of communications between me and counsel for N.M., Mr. Brian Klopfenstein, regarding N.M.'s failure to comply with this Court's discovery order directing her to produce divorce records, Doc. 122.

3. The Motion for Reconsideration states that "[o]n or about December 12, 2016, Mr. Klopfenstein communication [*sic*] with Plaintiff's then attorney, D. John Sauer concerning production of the records in N.M.'s divorce and custody proceedings. Mr. Klopfenstein communicated his efforts to find these records and make them available to Plaintiff." Doc. 218, at 4-5. The Affidavit of Brian Klopfenstein filed in support of the Motion for Reconsideration states: "In reviewing my file, on December 12, I communicated with Mr. Sauer regarding my

1

efforts to make available for production the divorce files as ordered by the Court responding to a scathing email he sent." Doc. 218-1, ¶ 22.

4.  These statements are not correct. Mr. Klopfenstein does not state whether this supposed "communication" on December 12, 2016 happened by telephone or email. I have no recollection of any such communication, and I am confident that it did not occur. My records contain no email from Mr. Klopfenstein on that issue on December 12, 2016. During this case, I maintained a consistent practice of documenting all substantive case-related oral communications with opposing counsel by sending counsel a contemporaneous email memorializing the conversation between us, thus allowing counsel an opportunity to object if he or she disagreed with my recollection of the conversation. My records contain no contemporaneous email memorializing a conversation with Mr. Klopfenstein on December 12, 2016.

5.  On December 13, 2016—the day *after* Mr. Klopfenstein alleges that he "communicated his efforts to find these records" to me—I sent an email to Mr. Klopfenstein issuing a final demand for the long-withheld divorce records, and warning him that I would file a motion for sanctions against him and seek attorneys' fees if he did not respond and produce the records by December 16, 2016. In that email, I specifically stated, "As you may recall, *we last discussed this issue by telephone on October 24*." Exhibit 1 (Sauer-Klopfenstein emails re discovery records), at 37 (emphasis added). The same December 13 email noted that, although Mr. Klopfenstein had stated on October 24 that Ms. Hart had located two boxes of responsive documents and that he would follow up with her about copy costs and arranging for production, "[y]ou have not produced those materials, nor have you confirmed that you followed up with Ms. Hart regarding this issue." *Id.* Clearly, I had *not* discussed this issue with Mr. Klopfenstein the day before, December 12. The last time we had discussed the issue was seven weeks earlier, on

2

October 24.  In the meantime, between October 24 and December 13, 2016, Mr. Klopfenstein had failed to respond to emails from me on November 8 and November 18, following up on this issue.  *See* Exhibit 1, at 34, 35.  Mr. Klopfenstein never responded to my December 13, 2016 email, and he never disagreed with my account of our communications, even though he did respond to other case-related emails regarding deposition scheduling during the same time frame.  *See* Exhibit 2 (Emails from Mr. Klopfenstein responding to case-related communications on December 9 and December 16, 2016).

      6.      As noted above, my December 13, 2016 email to Mr. Klopfenstein was the last of a long series of emails requesting the divorce records, to which Mr. Klopfenstein simply did not respond.  The course of our email communications on this issue is attached as Exhibit 1 to this Declaration.  The communications are as follows:

      a.  On August 16, 2016, I sent an email to Mr. Klopfenstein requesting the divorce records that the Court had ordered N.M. to produce, and attaching a copy of the Court's discovery order (Doc. 122).  In that email, I recounted my unsuccessful efforts to obtain the divorce records from N.M.'s prior counsel, Ken Chackes and Nicole Gorovsky, and N.M.'s divorce attorney, Alexandra Hart.  Exhibit 1, at 1.  Mr. Klopfenstein did not respond to this email.

      b.  On August 25, 2016, I sent Mr. Klopfenstein an email noting that he had not responded to my August 16 email, and requesting a response.  Exhibit 1, at 4.  Mr. Klopfenstein did not respond to this email.

      c.  On August 30, 2016, I sent another email to Mr. Klopfenstein requesting a response to my request for the divorce records.  Exhibit 1, at 7.

3

d. On September 9, 2016, I had a telephone conference with Mr. Klopfenstein regarding the divorce records, which I memorialized in a contemporaneous email to Mr. Klopfenstein. In this conference, Mr. Klopfenstein conceded that N.M. was obligated to produce the divorce records, and he represented to me that he had "reached out to N.M.'s divorce attorneys to procure the divorce records." Exhibit 1, at 10. But he declined to provide a time estimate as to when he would produce them. *Id.*

e. On September 19, 2016, I sent a follow-up email to Mr. Klopfenstein noting that he had not yet told me when he intended to make his supplemental production of the divorce records. Exhibit 1, at 12. Mr. Klopfenstein did not respond to this email.

f. On October 5, 2016, I sent another email to Mr. Klopfenstein noting that I had not received a response from him from my emails of September 9 and 19. Exhibit 1, at 14.

g. On October 11, 2016, I had a second phone conference with Mr. Klopfenstein regarding the divorce records, which I memorialized in a contemporaneous email to Mr. Klopfenstein. In this conference, Mr. Klopfenstein stated of the divorce records, "Dear God, I just don't know where they are." Exhibit 1, at 17. He stated that he had not yet contacted any of N.M.'s divorce attorneys to seek the records—which directly contradicted his representation to me during the September 9, 2016 phone conference. *See* Exhibit 1, at 17. He asked me for the contact information of Ms. Hart. In the October 11, 2016 follow-up email, I provided him with Ms. Hart's contact information and the contact information of the other divorce

4

attorneys who had represented his client, N.M., according to Missouri's Case.Net case-tracking system. *Id.* at 17-18.

h. Mr. Klopfenstein responded to my October 11, 2016 email, representing to me that he had spoken with Ms. Hart and that she would begin to search for records from one of the divorce proceedings that had occurred "6-7 years ago." Exhibit 1, at 21. I promptly replied to that email, also on October 11, reminding Mr. Klopfenstein that Ms. Hart had represented N.M. in other divorce proceedings as well. *Id.*

i. On October 24, 2016, I had a third phone conference with Mr. Klopfenstein regarding the divorce records, which I again memorialized in a contemporaneous email to Mr. Klopfenstein. Exhibit 1, at 27. In that phone conference, Mr. Klopfenstein stated that he had contacted Ms. Hart, that she had located two boxes of responsive records, and that "she is inquiring about photocopy costs to send them to you." *Id.* He never stated that photocopy costs would be $90.00. If he had done so, I would have agreed to cover the photocopy costs to obtain the records without hesitation. He also stated that he had contacted Mr. Mason Klippel, another of N.M.'s divorce attorneys, and stated that Mr. Klippel had agreed to conduct a diligent search of records. He stated that he did "not have a specific estimate as to when any of these records will be produced." *Id.*

j. That phone conference of October 24, 2016, was the last time Mr. Klopfenstein responded to any communication from me regarding the divorce records. Though he responded to other case-related emails in the ensuing weeks, he never responded to any subsequent attempts to obtain the divorce records.

5

k. On November 9, 2016, I sent Mr. Klopfenstein an email stating that, "despite numerous attempts, we still have not received the divorce records that the Court ordered your client to produce last June." Exhibit 1, at 34. Once again, I requested their prompt production. Mr. Klopfenstein did not respond to this email.

l. On November 18, 2016, I sent Mr. Klopfenstein an email stating that I had received no response to my email of November 9, and stating: "please produce the long-awaited divorce records without any further delay." Exhibit 1, at 35. In this email, I warned Mr. Klopfenstein that we would file a motion for discovery sanctions against him if he did not respond or produce the records. *Id.* Mr. Klopfenstein did not respond to this email.

m. Finally, on December 13, 2016, I sent Mr. Klopfenstein yet another email requesting the divorce records. Exhibit 1, at 37. I pointed out that "it has been more than six months since the Court ordered your client to produce these records." I stated that, "if we do not receive your client's divorce records by this Friday, December 16, we will be forced to treat that as a final decision to disobey the Court's May 26, 2016 discovery order." I stated that intended to file a motion for sanctions against N.M. "if we do not receive your client's divorce records by Friday." Further, I reminded him that "we last discussed this issue by telephone on October 24." I recounted that, "at that time, you stated that Alexandra Hart had informed you that she had located two boxes of responsive documents … and that you were working to obtain those documents from her." I stated: "You have never produced those materials, nor have you ever confirmed that you followed up with Ms. Hart regarding this issue." I also notified Mr. Klopfenstein: "Please be aware

6

that we will seek attorney's fees in our sanctions motion, and that we may request that any fee award be assessed against your client's counsel rather than against her personally." Exhibit 1, at 37.  Mr. Klopfenstein did not respond to this email.

n. Though Mr. Klopfenstein never responded to my emails demanding production of the divorce records on November 9, November 18, and December 13, he did respond to other case-related emails during the same time frame.  For example, on December 9, 2016, he sent an email to all counsel regarding deposition scheduling.  On December 16, 2016, he sent another email to all counsel regarding deposition scheduling.  *See* Exhibit 2.  But he never responded to my emails regarding the divorce records sent during the same time period.

7. The Motion for Reconsideration also states that Mr. Klopfenstein "[c]ontacted Alexandra Hart who did locate two boxes of responsive records.  By October 24, Klopfenstein reported to Sauer that the costs for copying those boxes would be $90.00 – a cost to be borne by Sauer."  Doc. 218, at 10.  The Motion for Reconsideration also states: "In this instance, if Mr. Sauer did not wish to expend the $90.00 required to copy the documents held by Alexandra Hart, that is his choice.  Neither N.M. nor her attorney is required to copy those records for him."  Doc. 218, at 12.  Similarly, the Affidavit of Brian J. Klopfenstein attached to the Motion for Reconsideration states that Mr. Klopfenstein "arranged for [Alexandra Hart] to make available to Plaintiff's attorney two boxes of documents, with the proviso that Plaintiff's attorney would be required to pay the cost of copying those boxes, estimated at $90.00."  Doc. 218-1, ¶ 11.

8. For the reasons stated above, these representations are incorrect, and they are contradicted by my contemporaneous email communications with Mr. Klopfenstein.  Mr. Klopfenstein never offered to produce the records for a copy cost of $90.00.  I would have agreed

7

to pay the copy costs for the records without hesitation. Rather, Mr. Klopfenstein simply stopped responding to my requests for the records after our October 24 phone conference. The last reference to copy costs he made was his statement on October 24 that he was inquiring about copy costs to the divorce attorney, Ms. Hart. Exhibit 1, at 27.

9. The Affidavit of Brian J. Klopfenstein also states that Mr. Klopfenstein contacted N.M.'s other divorce attorneys and that they "no longer had records or they were inaccessible to them." Doc. 218-1, ¶ 12. If true, this information was never communicated to me. The last communication from Mr. Klopfenstein that I received on this topic was during the October 24, 2016 phone conference, in which Mr. Klopfenstein stated that he was "able to reach Mr. Mason Klippel by telephone, and that he is retired and his records are in storage." Mr. Klopfenstein stated that Mr. Klippel "has agreed to conduct a diligent search of records relating to N.M.'s divorce proceedings." Exhibit 1, at 27. Again, on December 13, I emailed Mr. Klopfenstein and reminded him that "on October 24, you also stated that you had reached out to Mason Klippel, and that Mr. Klippel had agreed to search for and produce the records from the divorce-related proceeding in which he represented your client. Again, you have not produced those materials to us, nor have you provided any updates regarding the status of these documents." Exhibit 1, at 37. Mr. Klopfenstein never responded to this email.

10. The Affidavit of Brian J. Klopfenstein states that "Ms. Hart required an authorization to copy her file. We have remained willing to provide that authorization if Mr. Sauer wanted the file copies." Doc. 218-1, ¶ 16. It also states, "I did not obtain a copy of the file because I passed along the information to Mr. Sauer and I told him that if he wanted the file, I would get my client to sign the authorization." Doc. 218-1, ¶ 17. To my recollection, this conversation never occurred. As indicated by the contemporaneous email communications, the last Mr. Klopfenstein

8

stated about Ms. Hart's records was his statement that Ms. Hart had "located two boxes of responsive records related to the 2009-2010 modification proceedings," and that she was "inquiring about photocopy costs to send them to you." Exhibit 1, at 27. Moreover, if Mr. Klopfenstein had stated that he needed me to request that his client sign a written authorization to release Ms. Hart's file, I would have immediately requested it, as indicated by my numerous emails repeatedly requesting production of the records.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 12, 2017

*/s/ D. John Sauer*
D. John Sauer
